## MARMONT *v.* THE STATE.

CRIMINAL LAW.—*Sale of Intoxicating Liquor on Sunday.*—Where a society or club of persons, having a treasurer and other officers, met every Sunday, and each person on becoming a member paid into the treasury a certain sum and monthly assessments thereafter, to form the basis of a fund to pay expenses and for relief, and the treasurer, by order of the club and for the club, on each Saturday evening purchased a keg of "lager beer," an intoxicating liquor, and placed it in the hall where the meetings were held, and on Sunday whenever a member desired a glass of beer he got it, drank it on the premises, and delivered to the treasurer five cents, which money was placed in the treasury to keep up the funds, to pay expenses, and for relief for sickness and other mishaps to members;

*Held,* that the delivery of a glass of the beer under such circumstances to a

member of the club, and receiving five cents therefor by the treasurer, con-
stituted a sale by the treasurer, as agent of the club, within the meaning of
the statute of 1873, prohibiting the sale of intoxicating liquor on Sunday.

ADMISSION.—*Criminal Intent.*—An admission in an agreed statement of facts
that there was no intention of violating the law, followed by a further
admission that if the facts admitted constitute a violation of the law, then
is the defendant guilty, otherwise not, will not release the defendant from
liability because of a lack of intention to violate the law.

From the Marion Criminal Circuit Court.

*N. B. Taylor, F. Rand,* and *E. Taylor,* for appellant.

*J. C. Denny,* Attorney General, *R. P. Parker,* Prosecuting
Attorney, *H. Lee,* and *J. B. Elam,* for the State.

BUSKIRK, C. J.—The appellant was indicted, tried, and con-
victed, in the court below, for selling intoxicating liquors on
Sunday, and permitting them to be drunk upon the premises.
The court overruled a motion for a new trial, and rendered
judgment on the finding.

The appellant has assigned for error the overruling of the
motion for a new trial.

It is contended by counsel for appellant, that the finding of
the court was not sustained by, but was contrary to, the evi-
dence.

The case was tried in the court below solely and exclusively
upon an agreed statement of facts, which was as follows:

" 1. At and for a long time previous to the day named in
the indictment, the defendant was a member and the treasurer
of an association of German citizens of the city of Indianapo-
lis, in the county of Marion, in the State of Indiana, consist-
ing of about forty persons, united together for sociable and
relief purposes, and called ' The Modock Club.'

" 2. Each person becoming a member of said society paid
into the treasury the sum of fifty cents, and thereafter a
monthly assessment of ten cents, to form the basis of a fund
for payment of expenses and reliefs of said society; and the
said society was and is regularly organized, and has a presi-
dent, vice-president, secretary, and treasurer.

" 3. Said society meets regularly on the first day of the

week, commonly called Sunday, and the members pass the time of meeting in hearing speeches, and discussions on divers subjects, moral, political, and historical, reading the newspapers subscribed for by the association, conversing, smoking, and taking a glass of lager beer, and drinking same, when they feel disposed thereto.

"4. The meetings of said association are held in Marmont's Hall, a building on the south-west corner of Illinois and Georgia streets, in the city of Indianapolis, in the said county of Marion, in said State of Indiana, and no persons are admitted to said meetings except its members, and each member is furnished with a pass-key by which he can enter the hall on the days of meeting.

"5. On Saturday of each week, the treasurer of said association (who is the defendant in this indictment), by its order, purchases a keg of Cincinnati lager beer, which, if drank in sufficient quantities, is an intoxicating liquor, for the said association, and pays for it out of the society's money, the purchase and payment thereof being always made on Saturday, the last day of each week; and the said keg is on Saturday placed in said society's hall.

"6. At the meeting on the first day of the week, commonly called Sunday, when a member of said association desires a glass of beer, it is drawn from the keg purchased for and belonging to said association, and the member, for whom it is drawn and who gets it, delivers to the treasurer five cents, which is placed in the treasury of the society, and the treasurer gets no part of it, and derives no gain or profit whatever from the same; and all of said beer left after said meeting is thrown away.

"7. The said money, received for each glass of beer drawn for and used by a member of said association, goes into the society's treasury, to keep up its funds for payment of expenses, procuring refreshments, and for reliefs, which expenses are for fuel, rents of hall, newspapers, the beer used, and the donations or reliefs payable to each member of said association who, from sickness or other mishaps, may require assistance; and a

standing committee from the members of said society is appointed to see after and inquire into and direct the payment of necessary reliefs in all such cases.

" 8. The meetings of said association were and are conducted in an orderly manner; and it was not the intent of said society, in its organization, nor is it the intent of its members, in carrying it on, to violate the provisions of any law of the State of Indiana.

" 9. On the day named in the indictment, and at a meeting of said society at and in its said hall, the defendant, a member and the treasurer of said society, at the request of the said William Grasson, named in the indictment, who was also a member of said society, drew a glass of lager beer from the keg purchased for and belonging to said society as aforesaid, and handed it to said Grasson, who drank it in said society's hall, and said Grasson handed to said defendant, as such treasurer, five cents, which defendant immediately put into the treasury of the society, for its use and purposes aforesaid, deriving no gain therefrom.

" 10. If said act of drawing and handing said glass of beer to said Grasson, and receiving and putting said five cents into the treasury of said society, under the circumstances aforesaid, constitute an unlawful sale of intoxicating liquor for the purpose of gain, within the meaning and under the provisions of the act of the General Assembly of the State of Indiana, of February 27th, 1873, the defendant is guilty, and if otherwise he is not guilty."

It is very earnestly contended by counsel for appellant, that, upon the agreed statement of facts, there was no sale of intoxicating liquor within the meaning of the statute upon which this prosecution is based; but conceding there was a sale, the appellant was wrongly convicted, because it is agreed " that it was not the intent of said society in its organization, nor is it the intent of its members in carrying it on, to violate the provisions of law of the State of Indiana."

Counsel for appellant say: "To sustain the conviction in this case, the defendant must have sold intoxicating liquor on

Sunday, the first day of the week, to William Grasson; the sale must have been made in Marion county, Indiana; it must have been made for the purpose of gain; and the defendant must have suffered and permitted the liquors to be drunk in the building, or upon the premises where it was sold."

It is conceded, that if the transaction amounted to a sale for gain, the appellant was rightly convicted upon the first ground stated. To constitute a sale, there must be a passing of the right or title to property for money, which the buyer pays, or promises to pay, to the seller for the thing bought or sold. Noy Max. chap. 42; Shep. Touch. 244; *Williamson* v. *Berry*, 8 How. 495.

Under the arrangement as agreed upon, the keg of beer belonged to the society. The appellant was the agent of the society, and if he sold in violation of law he is liable to be convicted, in the same manner and upon the same principle as a bar-tender of a person who holds a permit under the statute in question is liable, who sells in violation of the statute. As the keg of beer when purchased belonged to the society, the question arises whether the society, by its agent, could make a valid sale of such beer to the persons composing such society. We know of no principle of law which prevents it. We know that it is the daily habit of partners to sell the firm property to the persons composing the firm, and quite frequently the members of the firm are permitted to purchase such goods or articles as they may need at cost.

When a firm purchases, with partnership funds or upon credit, a sack of coffee or a barrel of sugar, the coffee or sugar belongs to the firm; but when a part of each is taken out and transferred to each member of the firm, either for cash or upon credit, a valid transfer has been effected from the firm to the individual members. So, while the beer was in the keg, it was the common property of the society, but when a portion was withdrawn and delivered to a member of the society, upon credit or for cash, the portion so withdrawn ceased to belong to the society and became the separate property of the member so receiving it, and the transaction invested

him with the power to drink it himself, to give it away, to sell it, or to throw it away.    But, says the learned counsel for appellant, there was no gain or profit to the appellant.    It is not necessary that there should be gain or profit to him.    It is sufficient if the sale or transfer inured to the benefit of his principal, the society.    It is agreed that each member, upon his initiation, paid fifty cents and thereafter a monthly assessment of ten cents, to form the basis of a fund for payment of expenses and reliefs of the society ; and that the money received for each glass of beer drawn for and used by a member of said association goes into the society's treasury, to keep up its funds for payment of expenses, procuring refreshments, and for reliefs ; which expenses are for fuel, rents of hall, newspapers, the beer used, and the donations or reliefs payable to each member of said association, who, from sickness or other mishaps, may require assistance ; and a standing committee from the members of said society is appointed to see after and inquire into and direct the payment of necessary reliefs in all such cases.    We are not informed what profits are realized from the sale of each keg of beer, but it must be. considerable, or the proceeds would not be sufficient to pay expenses and furnish the necessary reliefs to the sick and unfortunate members of the society.

Parsons on Partnership says:    "Any partnership would probably consent that a partner might take a part of their goods on his own account, and would charge the same to. him.    But without such consent, express or implied, it is quite clear that he can appropriate nothing to himself.    Every partner owns the whole partnership property, subject to the equal ownership of every other partner ; and no one partner can make his own ownership of any part absolute, and relieve it from the incumbrance of the ownership of the others without their consent."    Parsons Partnership, 168.

So, in the present case.    When the society appointed the. appellant its agent for the sale of its beer to the members of the association, it consented that each member might become the owner of such portion of the partnership property as he

might be willing to pay for, and appropriate it to his individual use.  If the transaction set out in the agreed statement of facts be not an evasion and violation of the law, then a number of persons may do that lawfully which if done by one person would be unlawful.  It would be a reproach to the law and its administration, if a combination of persons could, by such an arrangement, evade the law and thwart the legislative will.

Counsel for appellant greatly rely upon the case of *Commonwealth* v. *Smith,* 102 Mass. 144.  In that case the facts were:  "Several persons formed a club of which the defendant was a member; they advanced a certain sum of money each, which was put into a common fund; the defendant was chosen agent of the club, and under instructions of the club purchased liquors and refreshments for the club; the fund was taken by the defendant and invested for them, and a certain number of checks, of the amount of five cents each, were delivered to each member of the club, to the extent of the money advanced by each; these checks were transferable only to other members of the club; upon presentation of the checks by any member to the defendant, he would deliver to that member liquor of the club, to the amount of the check presented; on several occasions the defendant had delivered liquor to the witness, as such member, upon checks; upon distributing the liquor in the manner aforesaid, it was calculated that the liquor would so far overrun the amount to be delivered upon the checks, as to leave in undelivered liquor about twenty per cent. of the original cost; and the defendant was to have this residue, to compensate him for his services as agent, and for the use of his room by the club.

"The presiding judge, in view of all the evidence, ruled that, if the liquor in the defendant's possession was bought by him as agent of the club, and the liquor so purchased was that of the club, the members advancing the money to purchase the same, and if checks were distributed to each of the members according to the amount advanced by each, and the defendant was a member of the club, and delivered to each

member upon presentation of such checks, from time to time, the amount of liquor represented by such checks, that would be a sale by the defendant."

The court, in speaking of the above ruling of the court below, say:  " One of the rulings of the learned judge of the Superior Court, at the trial, appears, however, to have been erroneous.   The arrangement described in the bill of exceptions  for the formation of a club, the purchase of liquors with their joint funds, and their distribution among the members by the agency of the defendant, may have been a mere evasion of the law.   Whether it was really so, however, was wholly a question of fact, to be passed upon by the jury, under proper instructions.   The court was not warranted in assuming, as a matter of law, that it was necessarily an evasion, or that, as a matter of law, the facts stated, to use the language of the presiding judge, ' would be a sale.'   It certainly might happen, and not unfrequently has happened, that a number of persons unite in importing wines, or other liquors, from a foreign country, to be divided between them according to some agreed proportion.   It could not seriously be contended that the person who should receive the liquor so imported, at his place of business, and make or superintend the division among the contributors to the purchase-money, is a seller of intoxicating liquors, or that they buy the liquors of him.   It is difficult to see how it could  make  any difference that the liquors are of various kinds, and were purchased in this country instead of being  imported from abroad,  or that the person who is to make the distribution delivers them in small quantities, and keeps his account by means of tickets or checks.  If the liquors really belonged to the members of the club, and had been previously purchased by them, or on their account, of some person other than the defendant, and if he merely kept the liquors for them, and to be divided among them according to a previously arranged system, these facts would not justify the jury in finding that he kept and maintained a nuisance, within the meaning of the statute under which he is indicted.  There would be neither selling, nor keeping for sale.   On the other hand, if the whole

arrangement were a mere evasion, and the substance of the transaction were a lending of money to the defendant, that he might buy intoxicating liquors to be afterward sold and charged to the associates, or if he was authorized to sell, or did sell, or keep any of the liquors with intent to sell, to any persons not members of the club, he might well be convicted. This, however, would be a question not of law but of fact, and would fall wholly within the province of the jury."

The only point actually decided in the above case was, that the question of whether the arrangement amounted to a sale was for the jury, and not for the court, and that the court in assuming to decide the question usurped the province of the jury; and for this error the judgment was reversed. In that case, the liquor was purchased with money belonging to the club, and a certain number of checks, of the amount of five cents each, were delivered to each member of the club to the extent of the money advanced by each, and upon the presentation of such checks the defendant would deliver to that member liquor to the amount of the check presented. In that case, the defendant received no money. Nor was there an accumulation of a fund for the payment of expenses and reliefs. The illustration given by the court of the importation of liquor, and its division according to an agreed proportion, applied with much greater force to that than the present case. It is quite obvious, that in the case supposed there would be no sale; but the case supposed is quite different from the one now in judgment. The present case was tried by the court, and its decision on the question of fact is entitled to the same weight as the verdict of a jury.

The case of *The State* v. *Mercer*, 32 Iowa, 405, is much in point. The facts are stated by the court as follows: "From the evidence before us it appears that there existed an organization called the 'Winterset Social Club,' the object of which was to supply its members with intoxicating liquors, to be used as a beverage. The manner in which this club carried on its operations is not explained further than it is shown that defendant had possession of the liquors used, and sold tickets

to members of the club, which were exchanged for or given in payment of intoxicating liquors in defendant's house by the members of the club presenting the tickets. The liquors were served out to the ticket holders and members of the club by defendant. Persons became members by signing their names in some book (but what were the contents of the book does not appear) and by buying tickets."

Upon the trial, the defendant offered in evidence the articles of association of the club, but they were excluded. The court say: "The articles of association are not in the abridgment of the record before us. It is therefore not possible for us to determine that they were material and admissible as evidence. But if we are to consider that they were of the purport as claimed by defendant's counsel in their argument, we must conclude that they were correctly excluded by the district court. They appear, by the statement of counsel, to have been nothing more than the foundation of an organization, the object and intent of which was to evade the law for the suppression of intemperance, a rather clumsy device by which the defendant and the members of the 'Social Club' hoped to defeat that law and establish a place of resort where they could be supplied with intoxicating liquors for unlawful use. The fact that, under the arrangement of selling tickets, the members of the club became the owners of the liquors to the extent of the money paid, does not make the sale of the liquors in that way lawful. The act of selling the tickets was the sale, in fact, of the liquors. It is confessed that such sales were for the purpose of supplying the liquors to the purchasers to be used as a beverage."

Having reached the conclusion, in the present case, that the beer was the property of the club, and that the appellant acted as its agent in making the sale, the ruling in the above case is entitled to much weight, and we are entirely satisfied that the transaction set out in the agreed statement of facts amounted to a sale in violation of the law.

But it is claimed that the conviction of the appellant was wrong, because it was admitted, on the part of the State, that

"it was not the intent of the said society in its organization, nor is it the intent of its members, in carrying it on, to violate the provisions of any law of the State of Indiana."

An eminent writer on criminal law says: "The doctrine of the intent, as it prevails in the criminal law, is necessarily one of the foundation principles of public justice. There is only one criterion by which the guilt of men is to be tested. It is whether the mind is criminal. Criminal law relates only to crime. And neither in philosophical speculation, nor in religious or moral sentiment, would any people in any age allow that a man should be deemed guilty unless his mind was so. It is therefore a principle of our legal system, as probably it is of every other, that the essence of an offence is the wrongful intent, without which it cannot exist." 1 Bishop Crim. Law, sec. 287.

While the doctrine as above stated is unquestionably the law, in its application to the facts of a particular case, it encounters and is somewhat modified by certain arbitrary legal rules which it has been found necessary to establish, in order practically to administer justice among men, and these rules are:

1. That every man is presumed to know the laws of the country in which he dwells; or in which, if residing abroad, he transacts business.

2. That ignorance of the law excuses no man.

3. That every person is presumed to intend the natural and reasonable consequences of his acts, and when he violates a law the presumption arises that it was wilfully done.

4. That ignorance or mistake in point of fact, where the person has been misled without fault or carelessness on his part, and where he believes, and has reasonable ground to believe, a certain state of facts to exist, is excused for acts honestly done while so misled. 1 Bishop Crim. Law, sec. 301; Squire v. The State, 46 Ind. 459.

The appellant is presumed to have known the law, and if he did not it is no defence. There is no pretence that there was any mistake of fact. The appellant having done an act

in violation of the law, the presumption is that the act was done wilfully. The question presented for our decision is, whether such presumption is overcome by the admission made by the State. That admission is to be construed in connection with all the other admitted facts; and, in our opinion, it cannot be construed as an admission that there was no criminal intent; but that the members of the association believed that their acts were not in violation of law, and that the appellant was not guilty unless the facts admitted rendered him so. This is shown by the last admitted fact: "If said act of drawing and handing said glass of beer to said Grasson, and receiving and putting said five cents into the treasury of said society, under the circumstances aforesaid, constitute an unlawful sale of intoxicating liquor for the purpose of gain, within the meaning and under the provisions of the act of the General Assembly of the State of Indiana, of February 27th, 1873, the defendant is guilty; and if otherwise, he is not guilty." This admission removes any ambiguity that may exist in the admission with reference to the intent of appellant, and must control. The sole question, therefore, for our decision is, whether the transaction as agreed upon amounted to an unlawful sale of intoxicating liquor.

Having reached the conclusion that the transaction amounted to a sale, we must necessarily hold that it was unlawful.

The judgment is affirmed, with costs.