## The Tennessee Club of Memphis *v.* Owen Dwyer *et al.*

Social Clubs. *Selling liquors.* A social club organized under the act of 1875, ch. 142, sec. 1, sub-secs. 3 and 5, maintained a library, gave musical entertainments, afforded meals for its members, and kept a small stock of liquors, which were for the use of its members, members paying for each drink as it was taken, but no profit was made for the club upon the liquors, the stock of which was in part kept up by the monthly dues of members. *Held,* the club was not liable to pay a privilege tax as a retail liquor dealer.

### FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDowell, Ch.

U. W. Miller and S. P. Walker for complainant.

Attorney-General Lea for the State.

Cooke, Sp. J., delivered the opinion of the court.

By the act of 1875, ch. 142, sec. 1, sub-secs. 3 and 5, it is provided that charters may be granted to any association of individuals for the following purposes: Sub-sec. 3: The support of any literary or scientific undertaking, as a college or university, with powers to confer degrees, an academy, a debating society, lyceum, the establishment of a library, the support of a historical society, the promotion of painting, music, or the fine arts, the support of boards of trade or chambers of commerce, or other objects of like nature.

And by sub-sec. 5: The maintenance of clubs for social enjoyment, gymnastics and gymnasium clubs.

Under these provisions the complainant was incorporated for the general objects as stated in its charter, of establishing a miscellaneous library, lyceum and art gallery in connection with reading and club rooms for social enjoyment; for the purpose of cultivating literary, scientific and æsthetic learning and taste, and of promoting social feeling and intercourse generally among the members of the corporation, so far as all acts for the accomplishment of these ends may or can be authorized under the legislation of the laws of Tennessee, and especially under sub-sections 3 and 5 of section 1 of above recited act.

In accordance with the provisions of the second section of said act, it was provided in said charter, section 6, "that the general welfare of society, not individual profit, is the object for which this charter is to be granted, and hence the members are not stockholders in the legal sense of the term, and no dividends or profits shall be divided among the members. The members may at any time voluntarily dissolve the corporation by a conveyance of its assets and property to any other corporation holding a charter from the State for purposes not of individual profits, first providing for the corporate debts. That a violation of any of the provisions of the charter shall subject the corporation to dissolution at the instance of the State."

The complainant, the Tennessee Club, was organized under this charter with a membership of 200 persons, each of whom, by the established regulations of the

organization were required to pay an initiation fee of $50, besides a tax upon the membership of $3 per month, to pay the current expenses of keeping up the club, such as rent of rooms, servant's hire, periodicals,. etc. One of its leading features being musical entertainments by amateurs, at which the daughters and lady friends of the members participate. In another sense the club is used as a home except for lodgings, and some of its members spend much of their time there every day. No one but members of the club have admission to the same save friends of members, living and residing outside of Shelby county. Strangers from a distance are entertained at said club by being introduced there by the members, and have the privilege of its reading room and parlors. The leading daily, weekly and monthly periodicals are taken and kept in its reading room, and a general library of books. And among other things the complainant keeps within its club a small stock of liquors, wines and cigars, which are dispensed to its members at a price fixed by a governing committee, not with a view, however, of making any profit, which is expressly forbidden by the 6th clause of its charter, but simply for the accommodation and convenience of its members. The money paid for refreshments is reinvested by the secretary of the club, in like refreshments used and consumed by its members. The liquors and refreshments are in the charge and custody of an officer and servants of the club, who are in attendance to wait on its members. The object of the sale of said liquors is not for the purpose of profit as before stated, but merely for the

Tennessee Club of Memphis *v.* Dwyer.

purpose of covering the outlay in the purchase thereof by the corporation and the expense attending upon the keeping and serving thereof at the club house. Not only is there no profit made by the sale of liquors, which is alone to its members, but a portion of the monthly dues and initiation fees are appropriated to keeping up the supply.

This mode of furnishing refreshments to its members was· interrupted by Capt. Dwyer, who, as clerk of the county court, issued a distress warrant against the complainant for $61, under a claim that said amount was due from complainant as a retail liquor dealer; said sum being claimed as a license tax as such for three months, and placed the same in the hands of respondent, Garvey, a constable, who levied it upon the property of complainant, complainant wholly denying that it was a retail liquor dealer, offered, however, in order to test the question of its liability, to pay said sum, under protest, and tendered the money and demanded a receipt therefor showing that the same was paid under protest; but said clerk refused to receive said sum demanded in the distress warrant and costs or receipt for the same unless the complainant would take the oath and give the bond required of retail liquor dealers, which complainant declined to do, and filed this bill to enjoin the execution of said distress warrant, and to enjoin said clerk from issuing any more distress warrants against the plaintiff, or seeking in any manner to hold it accountable or proceed against it as a retail liquor dealor.

An ˙injunction was granted, but the chancellor, upon

motion of respondent, dismissed the bill for want of equity upon its face, and the complainant has appealed. Any question as to the jurisdiction of the chancellor to grant an injunction in a case like this, provided complainant is not liable to said tax, has been waived by the parties, and the only question for determination is, was the complainant a retail liquor dealer within the purview and meaning of our statutes upon that subject, and liable to be distrained for said taxes as such?

All of the foregoing facts, as well as a specific denial that the complainant was or is a retail liquor dealer, is specifically averred and set forth in the bill, which upon a motion to dismiss are taken as true. Assuming then, the facts to be just as stated, do they constitute the complainant a retail liquor dealer under the laws of Tennessee upon that subject?

This is a question of first impression in Tennessee, and we are left to determine it upon general principles.

By the 8th section of the charter of the complainant, it is expressly provided " that the means, assets, income or other property of the corporation shall not be employed directly or indirectly, for any other purpose whatever, than to accomplish the legitimate objects of its creation, and by no implication or construction, shall it possess the power to issue notes or currency, deal in currency, notes or coin, *buy and sell products, or engage in any kind of trading operation.*"

By the act of 1881, ch. 149, sec. 4, retail liquor dealers shall be taxed as *other merchants,* and in addition shall pay a tax as follows: "Where they do business at

any·place not in a city or town, or in a city or town of 1,0C0 inhabitants or less, $150 per annum; in a city or town of more than 1,000 inhabitants and less than 5,000, $150 per annum; in a city or town of 5,000 inhabitants or over, $250, quarterly or semi-annually in the same proportion."

Questions very similar to the one before us have arisen in some of the other States. We have been referred to an Alabama case, *Martin* v. *The State*, 59 Ala., 34, where the agent of a corporation had sold liquor to its members under circumstances apparently very similar to this case, as appears from the statement furnished us, and was indicted under a statute of that State for having sold spiritous liquors without a license. We have not the statute before us upon which the indictment in that case was predicated, but the question seems to have turned entirely upon whether or not the facts of that transaction constituted a *sale*, and it was held that they did, and the conviction was sustained. How far the principle determined in that case is involved in this would depend very much upon the terms of the statute under which the defendant there was indicted.

The next case to which we have been referred as sustaining the action of the chancellor, is that of *Marmont* v. *The State*, 48 Ind., 21. That was also an indictment upon a statute of Indiana for selling beer on Sunday. The facts of that case were that there was a German club in Indianapolis, which met on Sunday for social and political purposes. The secretary, by order of the club, on each Saturday purchased

a keg of beer which was sold to the members of the club only, and the court held that this was a sale by the club to its members. From this brief statement of the case which has been furnished us, we are unable to see whether or not that case is an authority either way upon the question in this case.

We have been also referred to the case of *Ricart* v. *The People*, 79 Ill. R., 85. That was an indictment against the defendant who claimed to be secretary of a club, for selling liquors without a license. The facts of that case were that the defendant, who was a saloon keeper, sought to evade the law by a pretended sale of his liquors to his customers who formed themselves into a club and elected him their agent, under the title of treasurer. Persons became members by purchasing tickets, which entitled them to a certain amount of liquor, estimated according to the price of drinks and the amount paid, etc. It was thereby held by the court that the whole thing was a wise device to evade the law, and the conviction was sustained.

A similar question, in some respects, to the one now under consideration, arose in Massachusetts. There several persons formed themselves into a club, of which the defendant, Smith, was a member. They each advanced a certain sum of money which was put into a common fund, the defendant was chosen agent of the club, and under its instructions purchased liquors and refreshments for the club. The fund was taken by the defendant and invested for them, and a certain number of checks, of the amount of five cents each, were delivered to each member of the club to the

extent of the money advanced by each; these checks were transferable only to other members of the club. Upon presentation of the checks by a member to the defendant, he would deliver to such member the liquor of the club to the amount of the check presented. After the distribution of the liquor upon all the checks issued, about one-fifth of the original purchase remained, which the defendant as such agent, was to have for his services in selling and for the use of his room by the club.

Upon the defendant being indicted for a sale to one of the members, it was held that these facts did not necessarily and as a matter of law, constitute a sale of the liquor by the agent to the members; but that it was a fact for the jury, whether this arrangement was *colorable* and a mere evasion of the law or not. The court said if the liquors really belonged to the members of the club, and had been previously purchased by them or on their account, of some person other than the defendant, and if he merely kept the liquors for them and to divide among them according to some previous arranged system, these facts would not justify a jury in finding that the defendant kept a nuisance for the illegal keeping and sale of intoxicating liquors: *Commonwealth* v. *Smith*, 102 Mass., 144.

In the case of *Seim* v. *The State*, 55 Md., 566, a report of which is contained in the Maryland Law Record of April 30, 1881, the Supreme Court of Maryland, upon a case almost identical in its facts with the one now under consideration, held that the sale of liquor to the' members of a club under such an ar-

rangement, did not constitute a sale of liquors within the meaning of the statutes of that State, prohibiting the sale of spiritous liquors.

In a case recently decided in the High Court of Justice, Queen's Bench Division, in England, it was decided, in relation to a club almost identical in its objects, organization and mode of furnishing refreshments to its members, with the complainant club, that the sale of liquor by a club to its members, either for use on the premises or off of them, is not a sale within the meaning of a statute prohibiting any person from selling by retail intoxicating liquors without a license: Am. Law Reg., February, 1883.

We incline to adopt the reasoning of the cases last cited as more correct, and are of opinion that the facts stated in the bill do not constitute the complainant a retail liquor dealer within the meaning of the clause of the act of 1881, above quoted. It is clear from the allegations of the bill that the liquors kept by the complainant was not kept for sale to the public or as a traffic, nor was the public admitted to its rooms. No person but members were admitted except strangers who live outside of Shelby county, and they only upon special invitation of the members, and they are not permitted to purchase any liquors or refreshments. The liquors are purchased out of the common fund and are kept for the exclusive use of the members of the club. They are not sold for or at a profit, but the price the members are required to pay for them is regulated by the governing committee, is less than the original cost and goes back into the

common fund. They are served by a servant of the complainant, who is employed at a salary and has no interest whatever in the liquors or their proceeds, and we think it is clear from the statements of the bill, that the mode of sale as it is termed, to the members. at a rate fixed by the governing committee of the club, is only in fact an equitable and convenient mode of distributing refreshments to its members, which are provided by the club for them exclusively.

It cannot be controverted but that the complainant would have a right to purchase and keep liquors at its club rooms for the use of its members, and to distribute it among them in any method it might deem proper, and to raise funds for the purpose of replenishing by assessments upon the members, and the mode adopted of the form of a sale alone to its members of such a quantity for so much money, can be nothing more than a mode adopted of assessing each member in proportion to the amount he consumes, and cannot be distinguished in principle from that adopted in one of the cases referred to, of issuing checks to each member, which entitles him to so much liquor each, according to the amount of money he contributes.

We think, moreover, that it was not the purpose of the Legislature to class clubs organized and conducted as the complainant, as retail liquor dealers, or to impose a tax upon them by the provision of the act above cited. It will be remarked that it provides that retail liquor dealers shall be taxed as *other merchants,* and requires an additional tax which is graded in amount according to the population of the town or

city in which such retail traffic is carried on.   Thus clearly indicating that retailers of liquors to the public was contemplated by said act.

Again, the provision that retail liquor dealers should be taxed as *other merchants,* indicates that it was the intention of the Legislature to impose this tax upon those who engaged in the retailing of liquors as a business.

In the case of *The State* v. *Smith,* 5 Hum., 394, this court, in construing a revenue act, held that to constitute a *merchant* in the meaning of the revenue laws, *the business* of buying and selling should be the pursuit and vocation by which the party makes his living.   In that case the preceptor and proprietor of an extensive female school, had between fifty and a hundred pupils and tutoresses boarding with him and members of his family.   To supply these persons with clothes, books, etc., he kept on hand a supply of such articles of clothing and stationery as they might need, and furnished these articles not with a view of profit, but to accommodate his pupils and keep up his school. He sold to no person not a member of his family. Held that he was not a merchant, or subject to be taxed as such.

Upon the whole case, as made by the bill, we conclude that the complainant was not a retail liquor dealer within the meaning of the statute, that it was not required to pay said tax or take out a license as such, and that the distress warrant was wrongfully issued and levied upon its property; and that the chancellor's decree dismissing the bill for want of equity upon

its face, was erroneous, and will be reversed and the cause remanded to be proceeded in according to law and the rules of that court. Respondents will pay the costs of the cause in this court.