## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 15 2016, 7:15 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Timothy E. Strowmatt<br>New Castle, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Aaron T. Craft<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy E. Strowmatt,<br>*Appellant-Petitioner,*<br><br>v.<br><br>Indiana Department of Correction, et al,<br>*Appellee-Plaintiff.* | June 15, 2016<br><br>Court of Appeals Case No.<br>33A04-1505-MI-498<br><br>Appeal from the Henry Circuit Court<br><br>The Honorable Kit C. Dean Crane, Judge<br><br>The Honorable Peter D. Haviza, Special Judge<br><br>Trial Court Cause No.<br>33C02-1207-MI-71 |

**Altice, Judge.**

## Case Summary

Timothy Strowmatt, an inmate at the New Castle Correctional Facility, initiated this lawsuit against a number of State officials[1] (collectively, the State), challenging various aspects of laws passed to govern post-conviction conduct of sex offenders as unconstitutional violations of his due process rights and the prohibition against ex post facto laws. The trial court granted summary judgment in favor of the State on all of Strowmatt's claims. On appeal, Strowmatt, pro se, presents two issues for our review, which we restate as the following:

> 1. Was Strowmatt afforded sufficient notice that his convictions for attempted criminal confinement triggered application of the Indiana Sex Offender Registration Act (INSORA)?
>
> 2. Is INSORA void for vagueness as applied to him given that his convictions for attempted criminal confinement constitute a sex offense without a showing of a specific intent to commit a sexual act?
>
> 3. Is the 2006 amendment to Ind. Code § 35-50-6-5, which authorizes the deprivation of credit time or reduction of credit class if an offender refuses to register as a sex offender or refuses to participate in the Indiana Sex Offender Monitoring and Management (INSOMM) program, an unconstitutional ex post facto law as applied to Strowmatt?

---

[1] Strowmatt named Bruce Lemmon, Commissioner of the Indiana Department of Correction (DOC), Thor Miller, Chairman of the Indiana Parole Board, and Keith Butts, Superintendent of the New Castle Correctional Facility, as respondents.

We affirm.

## Facts & Procedural History[2]

Strowmatt was born on May 12, 1963. On or about January 27, 1992, Strowmatt committed the crime of child molesting, a Class C felony, against a twelve-year-old child. Strowmatt was convicted of that crime and sentenced to four years, with one year executed and three years suspended to probation. On or about May 20, 1994, while still on probation, Strowmatt molested a six-year-old child and was charged with child molesting as a Class B felony. He was convicted of this crime[3] and sentenced to twenty years, with ten years executed and ten years suspended.[4] Additionally, Strowmatt's probation for the 1992 conviction was revoked, and the trial court ordered the sentence for the 1994 conviction be served consecutive to the balance of the sentence imposed in 1992. Upon his release to probation in December 2002, Strowmatt was required to register annually as a sex offender.

---

[2] Strowmatt provided this court with a minimal record in support of his appellate arguments. The State filed an Appendix of Appellees to supplement Strowmatt's appendix. We have pieced together the facts and procedural history from the appendices submitted by the parties. Because the underlying facts are not in dispute, we relied in large part on the facts as found by the trial court and set forth in its summary judgment order.

[3] Strowmatt's conviction was affirmed by this court on direct appeal. *See Strowmatt v. State*, 686 N.E.2d 154, 159 (Ind. Ct. App. 1997).

[4] In an appeal from the denial of post-conviction relief, this court noted that the trial court ordered "imprisonment as a condition of probation for the opportunity of treatment that could possibly be available by the time the term of probation arrived." *See Strowmatt v. State*, 779 N.E.2d 971, 976 (Ind. Ct. App. 2002). This court further noted the trial court's concern that "until the proper treatment was available, society needed to be protected." *Id*.

[4]     On or about April 5, 2004, Strowmatt tried to grab a nine-year-old child and pull the child into his vehicle. In a separate, unrelated incident the same day, Strowmatt offered an eight-year-old child money to get into his car. The State charged Strowmatt under Cause No. 71D03-0404-FC-119 with two counts of attempted criminal confinement as Class C felonies, one count for each incident. The State also alleged Strowmatt to be a habitual offender. Following a bench trial, Strowmatt was found guilty as charged and adjudged to be a habitual offender. On January 5, 2005, the trial court sentenced Strowmatt to an aggregate term of twenty-eight years. Strowmatt is currently incarcerated at the New Castle Correctional Facility.

[5]     At some point, Strowmatt was advised by the DOC that he was classified as "F5"[5] due to his status as a sex offender. *Appellant's Appendix* at 20. On October 27, 2010, Strowmatt challenged his classification. The DOC responded, informing him that his classification was based upon his prior felony convictions for child molesting. On November 2, 2010, Strowmatt asked for an explanation of how his most recent convictions for attempted criminal confinement warranted such classification. The DOC responded, again informing him that "'your prior crimes make you an F5. Sex offenses stay with you.'" *Id*. On December 28, 2010, Strowmatt again appealed his classification.

---

[5] The record indicates that an F5 classification means that an inmate is ineligible for work release or minimum security housing, among other alternatives to incarceration offered by the DOC.

The DOC reaffirmed that he was "'classified correctly based on current criteria.'" *Id.* at 21.

[6] On March 1, 2011, the DOC indicated that Strowmatt's classification was due to current and prior offenses. The Supervisor of Classification approved the decision regarding Strowmatt's classification and indicated "'pending transfer to NCF for [IN]SOMM.'" *Id*. at 21. On March 10, 2011, Strowmatt informed the DOC that he would not participate in INSOMM until all legal process was complete. The following day, Strowmatt appealed the transfer decision. Strowmatt argued that "under current policy consideration, criminal confinement cases must be reviewed on a case by case basis. This is an 'attempt.' It does not meet the same criminal elements as an actual confinement case. Therefore, it cannot warrant a 'sex offense' or denial of work release/minimum security housing." *Id*. Strowmatt asserted that his "sex offender status must be removed." *Id*. On March 29, 2011, Strowmatt's appeal was denied. The DOC noted that "'[p]er central office, we are to submit all sex ofds to NCF IQ for [IN]SOMM.'" *Id*.

[7] Strowmatt initiated this lawsuit in July 2012 in the Henry Circuit Court. In November 2012, he filed five separate pro se motions for declaratory and injunctive relief. The State filed a motion to strike, challenging the procedural manner in which Strowmatt asserted his claims. During this time, Strowmatt requested a change of judge, which resulted in the appointment of the Honorable Peter Haviza of Randolph Superior Court as Special Judge. Judge Haviza addressed the procedural irregularities by striking the motions filed by

Strowmatt, but affording him ninety days to file a single complaint that complied with the Indiana Trial Rules. On January 10, 2014, Strowmatt filed a five-count, pro se complaint for declaratory and injunctive relief. Generally, Strowmatt challenged multiple aspects of the laws and policies governing post-conviction conduct of sex offenders claiming that they violate his due process rights to notice or violate Indiana's prohibition against ex post facto laws.

[8] On July 31, 2014, the State filed a motion for summary judgment. Strowmatt filed his own motion for summary judgment five days later. On September 3, 2014, Strowmatt filed his response to the State's motion for summary judgment. On September 15, the State filed a reply to Strowmatt's response as well as its response to Strowmatt's summary judgment motion. At a subsequent telephonic pre-trial conference, the trial court permitted Strowmatt to reply to the State's response to his motion for summary judgment. The State offered no argument, but rather agreed to rely on its written submissions for purposes of summary judgment. On April 27, 2015, the trial court entered its order granting summary judgment in favor of the State on all of Strowmatt's claims. Strowmatt timely filed his notice of appeal. Additional facts will be provided as necessary.

## Discussion & Decision

[9] In 1994, our legislature enacted INSORA, which identifies certain crimes that trigger its application and requires persons convicted of those specified crimes to register as "sex offender[s]." Act of March 2, 1994, Pub.L. No. 11-1994, § 7

(codified as Ind. Code §§ 5-2-12-1 through -13). When initially enacted, eight crimes triggered status as an "offender." I.C. §§ 5-2-12-4, -5 (1994). Since its inception, INSORA has been amended numerous times, resulting in an expansion of the number of crimes triggering sex-offender status. *See Lemmon v. Harris*, 949 N.E.2d 803, 805-08 (Ind. 2011) (discussing amendments); *Wallace v. State*, 905 N.E.2d 371, 375-77 (Ind. 2009) (same). As is pertinent here, criminal confinement where the victim is less than eighteen years of age was added to INSORA as a triggering offense in 1998. *See* P.L. No. 56-1998, § 6, 1998 Ind. Acts 917, 923. Attempt was added in 2001. *See* P.L. No. 238-2001, § 4, 2001 Ind. Acts 1901, 1905-06. In 2006, INSORA was moved from Title 5 to Title 11. The recodification of INSORA at Ind. Code Ch. 11-8-8 also included amendments to certain provisions therein, but attempted criminal confinement of a child continued to be identified as a "sex offense"[6] triggering application of INSORA.

[10] On January 4, 2000, the DOC Commissioner, in keeping with the DOC's goal of "maintaining public safety," issued Executive Directive # 00-01, which concerned establishment of INSOMM.[7] *Appellees' Appendix* at 64. The goal of

---

[6] I.C. § 11-8-8-5.2 defines "sex offense" as an offense listed in I.C. § 11-8-8-4.5(a). This is the same as it was under the previous version found at I.C. § 5-2-12-4(a)(12) and (13), which identified attempted criminal confinement as a "sex and violent offense[]." The circumstances of Strowmatt's convictions for criminal confinement establish the required statutory elements for attempted criminal confinement delineated as a "sex offense," (i.e., victim less than eighteen years of age).

[7] The INSOMM program was designed as a three-phase continuum. Phase I of INSOMM is a consent and assessment phase conducted while the offender is incarcerated, usually upon arrival. In Phase II, targeted offenders undergo a management program based on their risk of recidivism, which includes group therapy sessions. Phase III begins once a targeted offender is released to parole, and it requires the offender to attend

INSOMM then and now is "to reduce the recidivism of offenders convicted of sex crimes" by providing "sex offender specific programs, risk assessment and intensive specialized parole supervision on a statewide basis." *Id.*

[11] In April 2004, when Strowmatt committed his most recent crimes, Ind. Code § 35-50-6-5(a) provided that a prisoner could be deprived of any part of the credit time he had earned and demoted in credit class for violating one or more rules of the DOC, though a violation of a condition of parole could not form the basis of a deprivation. In 2006, the legislature added two provisions to I.C. § 35-50-6-5(a), effective July 1, 2006, explicitly authorizing the deprivation of credit time if a sex offender refused to register as a sex offender before being released from prison or refused to participate in a sex offender treatment program offered by the DOC (i.e., INSOMM) while the offender was incarcerated. I.C. § 35-50-6-5(a)(5), (6).

[12] On July 27, 2006, shortly after the effective date of the amendment to I.C. § 35-50-6-5, the DOC Commissioner issued Executive Directive # 06-30, which changed the eligibility requirements for INSOMM. This directive provided that "[r]ecent changes made by the Indiana General Assembly gives the Department of Correction the authority to mandate that offenders convicted of sex crimes participate in an approved treatment program for sex offenders." *Appellees' Appendix* at 56. The directive further provided that "[a]ny offender with a

and participate in sex offender treatment in the community and to take a polygraph examination at least every six months.

history of a sex offense conviction[8] shall be advised that [INSOMM] is a mandatory program and that failure to participate in the program or failure to complete the program successfully shall result in a disciplinary action." *Id*. In turn, a disciplinary action could result in a loss of earned credit time and/or demotion in credit class. As noted above, Strowmatt was advised that his current crimes as well as his past crimes qualified as sex offenses. On account of his status as a sex offender, the DOC classified Strowmatt as F5 and notified him that he was required to participate in INSOMM.

[13] As an initial matter, we note that Strowmatt is proceeding pro se on appeal. Pro se litigants are held to the same standard as trained counsel and are required to follow procedural rules. *Smith v. State*, 38 N.E.3d 218, 220 (Ind. Ct. App. 2015). "This has consistently been the standard applied to pro se litigants, and the courts of this State have never held that a trial court is required to guide pro se litigants through the judicial system." *Id*. We address Strowmatt's arguments as best as we can discern them.

[14] Our standard of review of summary judgment appeals is well established:

> When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter

---

[8] The notification form for INSOMM participation that was given to eligible offenders provided that it applied to "all offenders who have been convicted of a sex offense, as defined by the Indiana Code." *Id.* at 58.

of law. In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact. The party appealing a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous.

*M.S.D. of Martinsville v. Jackson*, 9 N.E.3d 230, 235 (Ind. Ct. App. 2014), *trans. denied* (citations and internal quotations omitted).

[15] "Where the facts are undisputed and the issue presented is a pure question of law, we review the matter de novo." *Id*. Likewise, questions concerning the constitutionality of a statute are reviewed de novo. *Zoeller v. Sweeney*, 19 N.E.3d 749, 751 (Ind. 2014). Here, the facts are undisputed. Strowmatt's arguments present pure questions of law. Indeed, generously construed, Strowmatt argues that INSORA violates his due process rights and is unconstitutionally vague as applied to his conviction for attempted criminal confinement. He also argues that the 2006 amendment to I.C. § 35-50-6-5 violates the ex post facto clause.

## Notice

[16] Strowmatt first argues that the trial court erred in concluding that his due process rights were not violated because he was afforded sufficient notice that his conviction for attempted criminal confinement was identified as a "sex

offense" under INSORA.  Strowmatt maintains that Ind. Code § 35-34-1-2(a)(3)[9] requires that the charging information allege that he violated INSORA. Without reference to INSORA in his charging information, Strowmatt asserts that he had no way of knowing that INSORA was triggered upon his conviction for attempted criminal confinement.

[17] The purpose of a charging document is to give the defendant particular notice of the crimes with which he is charged during the applicable statute of limitations period so that he can prepare a defense. *Bei Bei Shuai v. State*, 966 N.E.2d 619, 626 (Ind. Ct. App. 2012), *trans. denied*. Here, Strowmatt was charged with violating the criminal statutes proscribing attempted criminal confinement of a child, and the charging information referenced the statutory provisions relating thereto. Strowmatt was not charged with violating INSORA. Other than his bare assertion, Strowmatt does not cite any authority to support a determination that the State was also required to allege that a conviction for attempted criminal confinement would trigger application of INSORA.

[18] In any event, we note that as pertinent to Strowmatt's claim, the provisions of INSORA were triggered by the fact of his conviction for attempted criminal confinement; they were not the basis for the conviction. A reference to

---

[9] I.C. § 35-34-1-2 sets forth the requirements for an indictment or information. Strowmatt's argument is based upon the language of I.C. § 35-34-1-2(a)(3), which provides that an indictment or information "shall be in writing and allege the commission of an offense by . . . citing the statutory provision alleged to have been violated."

INSORA would need to be made only if an offender were charged with violating an INSORA requirement such as the registration requirement.[10]

[19]    Moreover, as the trial court accurately determined, at the time Strowmatt committed his most recent offense, INSORA plainly set out that an individual who committed the crime of attempted criminal confinement and the victim was less than eighteen years of age was an "offender" for purposes of INSORA. I.C. § 5-2-12-4(a)(12), (13) (Supp. 2013). Strowmatt's contention that he should not be required to know the law because he is not a lawyer ignores long-settled jurisprudence in Indiana that "every man is presumed to know the laws of the country in which he dwells." *Marmont v. State*, 48 Ind. 21, 31 (1874). Ignorance of the law is no defense. *Dewald v. State*, 898 N.E.2d 488, 493 (Ind. Ct. App. 2008) (citing *Marmont*, 48 Ind. at 31) ("ignorance of the law excuses no man"); *compare Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004) (noting that pro se litigants are held to the same standards as trained counsel), *trans. denied*. For these same reasons, we also reject his argument that he had no notice that a conviction for attempted criminal confinement of a child is a sex offense even though the offense does not require proof of a sex act. We find no error in the trial court's conclusion that Strowmatt had adequate notice that his conviction for attempted criminal confinement qualified him as an offender for purposes of INSORA.

---

[10] An offender who fails to register under INSORA commits a Level 6 or a Level 5 felony. *See, e.g.,* I.C. § 11-8-8-17.

## Vagueness

[20]     Strowmatt also argues that INSORA is void for vagueness as applied to him. His argument is based on his belief that attempted criminal confinement cannot be a sex offense without a showing that there was a specific intent to commit a sexual act. Strowmatt directs us to *Brown v. State*, 868 N.E.2d 464 (Ind. 2007), in which our Supreme Court held that a portion of the criminal confinement statute was unconstitutionally vague because the terms "fraud" and "enticement" failed to give adequate notice as to what conduct was proscribed and also encouraged arbitrary enforcement. Strowmatt's reliance on *Brown* is misplaced as he was not convicted under the part of the statute held to be unconstitutionally vague.

[21]     In any event, we note that due process requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Brown*, 868 N.E.2d at 467. We find nothing vague or arbitrary about INSORA when Strowmatt committed his crimes in April 2004. The legislature chose to classify attempted criminal confinement of a child as a sex offense triggering application of INSORA. INSORA unambiguously required such offenders to register under INSORA, and registration for life was required if the offender was over eighteen years of age and the victim was under twelve years of age. *See* I.C. § 5-2-12-4(a)(12), (13), -5(a), (b), -(13)(c) (Supp. 2003).

## Ex post facto

[22] Strowmatt challenges the 2006 amendment to I.C. § 35-50-6-5 as being in violation of ex post facto prohibitions of both the Indiana and federal Constitutions. When a statute is challenged as an alleged violation of the Indiana Constitution, our standard of review is well settled. Every statute stands before us clothed with the presumption of constitutionality until that presumption is clearly overcome by a contrary showing. *State v. Rendleman*, 603 N.E.2d 1333, 1334 (Ind. 1992). The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party. *Id.*

[23] The United States Constitution provides that "[n]o State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10. The Indiana Constitution provides that "[n]o ex post facto law . . . shall ever be passed." Ind. Const. art. I, § 24. An ex post facto law applies retroactively to disadvantage an offender's substantial rights. *Weaver v. Graham*, 450 U.S. 24, 29 (1981); *Collins v. State*, 911 N.E.2d 700, 712 (Ind. Ct. App. 2009), *trans. denied*. In other words, an ex post facto law increases the penalty by which a crime is punishable or alters the definition of criminal conduct. *Cal. Dep't of Corr. V. Morales*, 514 U.S. 499, 506 n.3 (1995); *Collins*, 911 N.E.2d at 712.

[24] In analyzing an ex post facto claim, the United States Supreme Court applies the intent-effects test. *Smith v. Doe*, 538 U.S. 84, 105-06 (2003). The first step is to determine if the legislature meant the statute to establish civil proceedings.

*Id.* at 92. If the legislature intended to impose punishment, the inquiry ends because punishment results. *Id.* If, however, the court concludes that the legislature intended a non-punitive regulatory scheme, then the court must further examine whether the statutory scheme is so punitive in effect as to negate that intention thereby transforming what had been intended as a civil regulatory scheme into a criminal penalty. *Id.* In assessing a statute's effects, courts should consider seven factors listed in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963). The seven factors are:

> "[1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment-retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned."

*Wallace*, 905 N.E.2d at 379 (quoting *Mendoza-Martinez*, 372 U.S. at 168-69). Our Supreme Court has held that the intent-effects test provides the appropriate analytical framework for analyzing ex post facto claims under the Indiana Constitution. *Wallace*, 905 N.E.2d at 378.

[25] We begin by noting that Indiana's credit time assignments[11] and the grounds for reduction or deprivation are established by statute. Strowmatt challenges I.C. § 35-50-6-5, which provides, in pertinent part, as follows:

> (a) A person may, with respect to the same transaction, be deprived of any part of the educational credit or good time credit the person has earned for any of the following:
>
> * * *
>
> > (5) If the person is a sex or violent offender (as defined in IC 11-8-8-4.5) and refuses to register before being released from the department as required under IC 11-8-8-7.
> >
> > (6) If the person is a sex offender (as defined in IC 11-8-8-4.5) and refuses to participate in a sex offender treatment program specifically offered to the sex offender by the department of correction while the person is serving a period of incarceration with the department of correction.

Strowmatt's specific challenge is that the 2006 statutory amendment adding (a)(5) and (6) went into effect two years after his conviction, and thus, he cannot be required to participate in the INSOMM program such that his refusal to do so results in him being deprived of earned credit time. The basis for Strowmatt's claim is that deprivation of credit time constitutes a punishment.

---

[11] Good time credits and classifications are not constitutionally required. *See Bleeke*, 6 N.E.3d at 933.

As our Supreme Court has noted,

> when the purpose of [INSOMM] is to reduce the recidivism rate of sex offenders who are released back into society, providing prison officials with the option (subject to due process protections) of reducing or revoking credit time for convicted offenders who refuse to fully participate in the program while incarcerated—and thus not returning them back into society as quickly because they are not rehabilitated—is "a sensible approach to reducing the serious danger that repeat sex offenders pose to many innocent persons, most often children."

*Bleeke v. Lemmon*, 6 N.E.3d 907, 933-34 (Ind. 2014) (quoting *McKune v. Lile*, 536 U.S. 24, 48 (2002)). Our Supreme Court further noted, albeit in a slightly different context, but equally applicable here, that the State is permitted to present all INSOMM inmates "with a constitutionally permissible choice: participate in the [IN]SOMM program and maintain a more favorable credit status and/or privileges within the prison system or a favorable assignment in a community transition program, or refuse to participate and instead serve out the full term for which he had been lawfully convicted." *Id*. at 934.

Deprivation of credit time is the consequence of failure to comply with a requirement of prison life; it is not a punishment for the crime that landed the person in prison. Thus, contrary to Strowmatt's claim on appeal, removal or reduction of a sex offender's earned credit time or credit classification does not extend an offender's period of incarceration beyond that of his or her original sentence; rather, it merely reduces the availability of an early release date.

[28] We also observe that the challenged statutory provisions do not mandate that a sex offender be deprived of earned credit time. It is by DOC rule, which was implemented after the amendment to I.C. § 35-50-6-5 and two years after Strowmatt committed his most recent crimes, that sex offenders are required to participate in INSOMM. The DOC rule mandates that a sex offender's refusal to participate in the program will result in discipline, which can take the form of deprivation of good time credit or a demotion in credit class. Discipline is designed to implement the prison's administrative rules. A sex offender can avoid discipline by fully participating in INSOMM. The DOC is implementing its rule by offering a constitutionally permissible choice to a lawfully convicted offender: comply with DOC rules or serve out the full sentence received as a result of your lawful conviction.

[29] It is clear that in amending I.C. § 35-50-6-5, the legislature did not intend to impose punishment. The purpose of the statute is to encourage sex offenders to participate in INSOMM. In considering the seven factors for assessing the statute's effect, it is evident that the sanction does not impose a restraint greater than that which was proscribed for the underlying conviction, mandatory participation in INSOMM is not punishment, there is no requirement for a finding of scienter, the behavior to which the statute applies (i.e., refusal to attend INSOMM) is not a crime, it advances a non-punitive interest in that it seeks to encourage sex offenders to participate in a program designed to rehabilitate and help reintegrate them back into society, and it clearly is not excessive. In short, the effect of the DOC rule, which is based on I.C. § 35-50-

6-5, is not punitive. We therefore conclude that the 2006 amendments to I.C. § 35-50-6-5 do not violate the ex post facto clause.

[30] In summary, Strowmatt was afforded adequate notice that his convictions for attempted criminal confinement of a child triggered application of INSORA and that his conviction was deemed a sex offense thereunder. Also, the 2006 amendment to I.C. § 35-50-6-5 is not an unconstitutional ex post facto law.

[31] Judgment affirmed.

[32] Bailey, J. and Bradford, J., concur.