RIVES, J.,
delivered the opinion of the court:
This is a conviction of bigamy before the Circuit court of Rockingham. Three grounds of error are assigned: 1st, the refusal to give the eleven instructions asked for by prisoner’s counsel; 2nd, the giving of the instruction *asked for by the commonwealth’s attorney; and 3d, the denial of a motion for a new trial. They are severally set out in th.e first, second and third bills of exception, together w-ith the action of the court thereon, all consecutively- appearing in the record, so that it is unnecessary to recapitulate them here, except so far as it shall be necessary to eliminate the points presented for decision in this cause. The first and second bills of exceptions, with the exception of the ninth instruction in the first bill, turn upon the admissibility and sufficiency of the prisoner’s admissions and acts as proof of his alleged first marriage. This is the leading and material question; but before proceeding to its consideration I would first dispose of the question arising under the ninth instruction, which the court overruled; though, I presume, but little stress is laid upon it. This instruction is in these words: “If the jury believe from the evidence that the second marriage between the prisoner and Caroline Moyerhoeffer was had and solemnized in the county of Rockingham in the year 1864 or 1865, prior to the restoration of the civil government of the state in said county under the Alexandria constitution, and after the secession of the state of Virginia from the United States, they should find the prisoner not guilty.” It is sufficient to say that marriage is a civil contract, deriving its obligation, like all other contracts, from the consent of the parties; and that it is a legal necessity and a cardihal principle of repose to hold such contracts as unimpaired by changes of government, and subject only to the actual laws and authorities prevailing at the time of the contract. There can, therefore, be no reasonable question of the propriety of refusing this instruction.
As to the residue of the instructions in the first bill, and the comprehensive one given at the instance of the commonwealth’s attorney in the second bill, it may be *said, they raise virtually but one question; and that is, of the sufficiency on a trial for bigamy of a prisoner’s acknowledgments, coupled with cohabita *465 tion and recognition,. to procure his conviction. The necessity of proving a marriage in fact, conformable to the laws of the state where had, is expressly conceded by the court; but the jury are instructed that they are entitled to receive and weigh, as evidence of these facts, the admissions and acts of the prisoner; and that “such are as good evidence and as available and sufficient for his conviction as they would be in any other case.” It is but just to the court below to construe the concluding phrase “in any other case” as in pari materia, and meant only to apply to criminal or quasi-criminal actions, such as for criminal conversation. To this latter suit, it is well known, the same rules of evidence touching prisoner’s admissions or acts, are universally applied as to the charge of bigamy.
' This question is now for the first time presented to- this court for decision. In Warner’s Case, 2 Va. Cas. 95, it was held that the production of the marriage registry or certificate was not necessary; but that the marriage could be established in conformity with the laws of Pennsylvania, by the evidence of a witness to the marriage, and to the reputation of the person, as a justice of the peace, before whom the same was solemnized. While this was the only extent to which that judgment went, Judge White, in delivering the opinion of the court, vindicated with great research and ability the general proposition that the confessions and acts of the prisoner should be accepted as proof of marriage.
On consulting the decisions in other states, I find a great conflict of authority; but a decided preponderance in behalf of the same proposition. The courts of New York, Massachusetts and Connecticut have denied the *competency of a prisoner’s confessions to establish the first marriage; but a contrary doctrine has prevailed in Pennsylvania, Commonwealth v. Murtagh, 1 Ashmead’s R. 272; Forney v. Hallacher, 8 Sergt. & Rawle’s R. 159; in Maine, Gayford’s Case; 7 Greenl. R. 57; Ham’s Case, 2 Fairf. R. 391; and The State v. Hodgskins, 19 Maine R. 155; in Wisconsin, West v. State, 1 Wisconsin R. 209; in Ohio, Wolverton’s Case, 16 Ohio R. 173; in Alabama, Langtry v. The State, 30 Alab. R. 536; and in South Carolina, Britton’s Case, 4 McCord’s R. 256; and Hilton’s Case, 3 Rich. R. 434. Out of these numerous references I may be permitted to select specially West’s Case, froml Wisconsin 209, as affording the best analysis of authorities, and the most satisfactory exposition of the grounds and qualifications of the doctrine. The reasons for establishing a different rule in this - country from that most generally asserted in England, are stated with great cogency in the case of Forney v. Hallacher, 8 Sergt. & Rawle’s R. 159. Cahagan’s Case, 1 Parker’s C. R. 378, contains a brief summary and review of these cases, and discloses the fact that the judge pronouncing the opinion was sensible of the weight of authority against him, and seemed to rest his opinion upon precedent cases. Fenton v. Read, 4 Johns. R. 52; People v. Humphrey, 7 Johns. R. 314, &c. It is observable that he concedes in his opinion, the admissibility, as evidence, of such confessions, but controverts their sufficiency. If admissible, it may be well asked, Why should not the jury be allowed to judge of its sufficiency as in other cases, and the court be precluded from assuming it as a question for law? The course of English adjudications up on this subject has not been uniform. There is the very hard and remarkable case of Catherwood v. Caslon, 13 Meeson & Welsb. R. 261. It was an action of ’crim. con. for the seduction *of a wife in Hondon; the marriage was proven as having taken place in Beyrout in Syria, at the British consulate, and solemnized by a Presbyterian missionary from America. The plaintiff failed in his action, because the marriage was not before a minister in Episcopal orders, according to the requirements of the English statutes. It may be well to note in this case, there was an offer to conform the proofs to the required statutory formalities, leaving it to be inferred that the case might have been differently settled if it had rested on the allegations of a foreign marriage under the lex loci. On the other hand, is the very different and opposite case of Reg. v. Simmosto (1 Carr & Kirwan), 47 Eng. C. L. R. 164. There, proof was offered and received “that the prisoner had several times said that he was married to his first wife by Dr. Sinclair, a Presbyterian minister in orders in New York ; that the parties had lived together as man and wife; that witness was present at the christening of a child of theirs,” &c. ; and these admissions were held to be sufficient evidence of the first marriage. The learned judge who gave this ' opinion (Wightman, J.), also held in Reg. v. Newton, 2 Moo. & Rob. 503, that the prisoner’s admissions,- deliberately made, of a prior marriage in a foreign country, are sufficient evidence of such marriage, without proving it to have been celebrated according to the law of the country where .it is stated to have taken place. To these might be added the cases from East, cited by Judge White .'in Warner’s Case. . .
Erom this brief review and comparison of the American and English adjudications, it will be seen that so far as the weight of authority is concerned, the scale inclines to the rulings of the court in this case. We think the position is also fortified by the peculiar reasons for such a rule in our country, arising out of the diversities of marriage acts in the various states, and the large admixture of foreigners in our population.
*The cases that have been cited so fully develop the grounds and reasons of the principle we are considering, it is needless to enforce or recapitulate them here. But it is proper to clear up some ambiguity and confusion that lurk in these decisions. Eor instance, it is stated that such declarations must not be loose and casual, but solemn and deli oeiT.' e ; must *466 not be equivocal in their tendency, being as apt to’pibve 'á device to' hide 'the'1 :áhame of a scandalóús' and meretricious'linioh, -as1 to disclose’• a1 Marriage- 'in •f'afct.',: But'all' these cohsid'era'tions relate, not to th'e' Competency, 'but'to'th'e sufficiency* 'of; such "evidence, and are'f'éfefable' tb thfe 'jury.' ■ If'it' should appear from the time and' 'circumstances 'that 'th'e ' declarations wefe such as might have'béeii Snadel’to' éScaípe "the1 Censure ■ of la’sc'ivio'us Cohabitation; 6r tb elude inquiry; iñ sú'ch’cáse they* Would "not'■ be likely to procuré'Uo’r'adequate to' justify a conviction ;''biit if 'they'did,' 'redriess 'Could' be given' by the 'court in-'the award of a.' nett trial. T d’o 'no't, therefore,"appreberid- or 'appreciate the'miéch'ié'fs'tha't áre' dépreeáted' in the event'Cf'thejury’S "t>eih¿- permitted tb receive arid Weigh S'ucli 'testimotiy; " • • ■ ■
It must'bCremémbéred,'that'it is riot1 proposed t'o -dí'ápetíse"With''the ''necessity' of proving; the m'a'rriage’i'n' fecit; that’i's fe's-sentially "á" p'art' of' the' body 'of the1'crime-; and without it,' the' óffénCe cannot-bev” But what evidence Shall'establish'that feet,' -Was an inquiry waWed'in"the''early cáse 'of Mbr--ris v. Millet, that'has undergone’so' close a scrutiny'before1 all th'e courts that have pronounced ofrthis q’uestiorl. " • ; -■
Bet us then look at the facts.of,this'cáse. The prisbnér stated that he was ni'arfied 'in' Orange 'c'oúntjr, New Yprk ; That in 185(5 or 1857 he removed with h'is wife' án'd children' to Fairfax .'cOuqt'y 'in ' ibis' jsta’té; that'he continued to rfesidq ¡there {ill after ’ thé'báR tie of Ma.nassas iq: 1861’, Vahen he left thát arid 'did , 'rqt’urh the winter pf *1865; that he'""recognized Ma’ry'Sheridan'as'h'is wife, and her children ás his'oiyri Rtlia't" after his feturn in 1865,' he again, récóghized'hér'as‘his yvifé and lived with‘her ,ás s'u'ch, arip 'coriiplainéd that she’bad beéh'badíy 'treated by"Others';' and tháVhe had requested One' qf'the'wR-, nesess to act a'¿ foster father for'one of his ’ ‘ '' ' '
Now, I,submit .that these .admissions are not loose.or .casual,,b.ut deliberate.; áre corroborated, b.y the aefs of. the prisoner;, ar,e. neither ambiguous no,r equivocal in their tendency, and bear directly upon.the gist of the inquiry, riamely, the first marriage. .,.
On this state of the proofs,-the jury were well warranted i-ri-finding -the,.fact,.-which they tended to establish; but even-if this, were not so,- .and this • court entertained doubts of the .correctness - of the verdict, it-is its established-ipractioe to .acquiesce .in the denial-.of a-new -trial, unless .the evidence should-be-plainly insufficient to warrant the-verdict.--. Vaiden’s Case, 12 Gratt. 717, and Kates’ Case, supra 561. The prisoner, therefore, takes nothing by his third bill of exceptions;
All the -questions' arising' in' this case, have been thu's 'considered' and disposed' of; and it only -féñiains to' say that the judgment of'the court b'eloW must be affirmed;
Judghiént affirmed.: