—————o—————

## SQUIRE *v.* THE STATE.

CRIMINAL LAW.—*Bigamy.—Evidence.—Admissions of Defendant.*—In a prosecution for bigamy, it is competent to prove the former marriage by the admissions and declarations of the defendant.

SAME.—*Instruction.—Criminal Intent.*—In a prosecution for bigamy, it is proper to charge the jury that if they believe from the evidence that the defendant had been informed that his wife had been divorced, and that he had used due care, and made due inquiry, to ascertain the truth, and had, considering all the circumstances, reason to believe, and did believe, at the time of his second marriage, that his former wife had been divorced from him, then they should find for the defendant.

SAME.—*Reasonable Doubt as to Life of First Wife.*—In a prosecution for bigamy, the State must prove beyond a reasonable doubt that the first wife was living at the time of the second marriage. Where there is no direct evidence on this point, and the only evidence is, that the first wife was alive two years previous to the second marriage, the presumption of the continuance of her life is neutralized by the presumption of the innocence of the defendant, and in such case there can be no conviction.

SAME.—*Evidence.*—In a prosecution for bigamy, it is not error to admit in evidence the marriage license, and the return made thereon by the clergyman who performed the marriage ceremony at the second marriage.

From the Daviess Circuit Court.

*J. W. Burton* and *J. W. Ogden*, for appellant.

*J. C. Denny*, Attorney General, for the State.

BUSKIRK, J.—This was a prosecution for bigamy. The appellant, upon a plea of not guilty, was tried by a jury and

found guilty, and over motions for a new trial and in arrest, judgment was rendered on the verdict.

The motion in arrest of judgment calls in question the sufficiency of the indictment. Counsel for appellant have failed to point out any objection to the indictment, and we are satisfied, after a careful examination of it, that it is good.

The motion for a new trial was based upon the admission of incompetent evidence, the insufficiency of the evidence to support the verdict, and the refusal of the court to give certain instructions asked by the appellant.

The first and third reasons will be considered together. The only evidence offered by the State to prove the former marriage of the appellant consisted of his admissions. The first admissions proved were made before his second marriage. The second were made to the officer who arrested him. The third, when he was arraigned before a justice of the peace upon such charge, he pleaded guilty. A certified transcript of the proceedings before the justice was read in evidence. Upon the trial, the appellant asked the court to charge the jury as follows:

" 1. That the admissions of the defendant of the former marriage is not sufficient proof of itself of the former marriage to warrant the jury in finding the defendant guilty."

The question is therefore presented for our decision, whether, in a prosecution for bigamy, it is competent to prove the former marriage by the admissions and declarations of the defendant.

Such proof was held to be competent and sufficient by this court in the case of *The State* v. *Seals,* 16 Ind. 352. But it is earnestly contended by counsel for appellant, that the ruling in that case is not supported by the weight of authority, and we are asked to overrule it.

In our opinion, the ruling in the above case is fully supported by the weight of authority. It is settled by authority in England, Canada, Maine, Pennsylvania, Delaware, Virginia, South Carolina, Georgia, Alabama, Texas, Ohio, Iowa,

and California, that the defendant's admissions of a former marriage may be given in evidence upon a prosecution for bigamy to prove the fact of such marriage, and that such admissions were sufficient to prove the former marriage. In Massachusetts, Minnesota, Connecticut, and New York, a contrary doctrine has been expressed.

The cases supporting the positions above stated will be found collected in note *g*, to sec. 2630, pp. 811 and 812, 2 Whart. Crim. Law. See, also, cases collected in note A, p. 721, 3 Chitty Crim. Law.

We think the admissions of the appellant were properly admitted in evidence to prove the fact of his former marriage; and that the court committed no error in refusing to give the above instruction.

The appellant requested the court to give the following instruction: "That if the jury believe, from all the evidence in the case, that the defendant married the second time in the honest belief that his former wife had been divorced from him, they should find him not guilty;" but the court refused to so charge, and this refusal was assigned as a reason for a new trial, and is relied upon here to reverse the judgment.

The appellant testified in his own behalf. The substance of his testimony was, that he left the State of New York about two years ago and came to this State, where he had resided ever since; that he left his wife in the city of Buffalo, in the State of New York, she refusing to come west with him; that he came to Washington, Daviess county, Indiana, in July, 1873, where he had ever since resided, and still resides; that he had not been in the State of New York since he left there, two years ago, but he had received letters from his parents and brothers in the State of New York, informing him that his wife Elizabeth had procured a divorce from him in said State of New York; and that he had married the said Ruth Summers under the belief that such information was true.

Bishop on Criminal Law, in sec. 303, vol. 1, p. 187, says: "The wrongful intent being the essence of every crime, the

doctrine necessarily follows, that, whenever a man is misled without his own fault or carelessness, concerning facts; and, while so misled, acts as he would be justified in doing were the facts what he believes them to be, he is legally innocent, the same as he is innocent morally."

The same author, in his work on Statutory Crimes, in sec. 355, p. 234, says: "In the cases mentioned in the preceding sections, there is no crime, because, by a rule of the common law, there can be none where the criminal mind is wanting. But the reason why it is wanting in these cases is, that, either in consequence of a technical rule, or by force of a natural fact, it is impossible the criminal mind should exist; since that cannot be for whose existence there is no capacity. But there may be a capacity for the criminal intent, while yet no crime is committed, even though the outward fact of what otherwise were crime transpires. It is so where one, having a mind free from all moral culpability, is misled concerning facts. If, in such a case, he honestly believes certain facts to exist, and, though they do not, acts as he would be legally justified in acting if what he erroneously believes to be were real, he is justified in law, the same as he is in morals. The books are full of illustrations of this doctrine; and the reader perceives that, in reason, it must govern statutory crimes, the same as crimes at the common law."

The same author, in sec. 356, illustrates the above doctrine as applicable to a prosecution for bigamy, when he says: "But this exception has no relation to a case in which, on independent information and special grounds, a husband or wife is really believed to be dead. Suppose, for example, a husband, intending to entrap his wife, goes out ostensibly on a sail with confederates, and they come back and represent that he is drowned, while he secretly escapes abroad; she believes the statement, administers on his effects, and at the end of a year marries. Then he returns and procures her indictment for polygamy. On a just consideration, the common law rule, and not the statutory one, prevails, and she should be acquitted."

Squire *v.* The State.

The same rule would apply to the dissolution of the marriage relation by divorce as by death.

We think the court should have charged the jury, if it had been so asked, that if they believed from the evidence that the defendant had been informed that his wife had been divorced, and that he had used due care and made due inquiry to ascertain the truth, and had, considering all the circumstances, reason to believe, and did believe, at the time of his second marriage, that his former wife had been divorced from him, they should find him not guilty.

There was probably no error in refusing the instruction as asked, as it was based solely upon the belief of the defendant, and did not require that such belief should be the result of due care and careful inquiry, and that he should have reasonable grounds to entertain such belief.

It is next contended that the appellant was improperly convicted, because there was no evidence that his former wife was alive at the time of his second marriage. The statute upon which this prosecution is based provides, that "if any person, being married, shall marry again, the former husband or wife being alive, and the bond of matrimony still undissolved, and no legal presumption of death having arisen, such person so offending shall be deemed guilty of bigamy," etc. Sec. 46, 2 G. & H. 452.

The indictment in the present cause charged that the first wife of the appellant was alive at the time of his second marriage, and that no presumption of death had arisen. If there had been direct proof that the first wife was alive at the time of the second marriage of the appellant, and that he was aware of such fact, the presumption of her death would have been unimportant. But there was no direct proof that she was alive at such time. It therefore becomes necessary to inquire whether there was any presumption of her death, and if there was, whether such presumption was strong enough to overcome the presumption of the innocence of the appellant.

Bishop, in his work on Statutory Crimes, in sec. 611, p. 403,

says: "Concerning one further question, the practitioner should be on his guard. Suppose the first husband or wife is not directly shown to have been alive at the time of the solemnization of the second marriage, but at some point of time anterior thereto, under what circumstances is death to be presumed? If the absence had continued for seven years, the law, both by its common law rules and by the statute, presumes death; but, even then, there is no presumption as to the particular time when it took place, especially there is none that life continued up to within a day of the expiration of the seven years. Now, under the combined operation of the polygamy statute and of the common law, if a man's wife abandons him, and a year afterward, having no information whether she is dead or alive, he marries another woman, he, in point of law, does not commit polygamy should it turn out that she is really dead; but, should it turn out that she is alive, he does. Then, suppose he is indicted for polygamy, and, at the trial, there is no evidence whether she is dead or alive, except that she was alive a year before the second marriage, what is the result? If, at the time of the trial, seven years have elapsed, and the woman has not been heard from, the law presumes that, now, she is dead, but it has no presumption as to the time of the death. The law, however, presumes the defendant to be innocent; and it would seem, on this state of the case, that, as there is no presumption of the life having continued even a year after the separation, the court should direct an acquittal. If, on the other hand, seven years have not elapsed at the time of the trial, then the presumptions of life and of innocence operate together, the one for the defendant and the other against him. They neutralize each other, and the jury must act on other presumptions and evidence, and decide, as matter of fact, between them all. Perhaps there is not sufficient authority carrying the point in the former supposed instance to the full extent there intimated; but, at least, a verdict of acquittal in such a case would, on the authorities, and certainly in reason, be preferred."

In *Rex* v. *The Inhabitants of Twyning*, 2 B. & Ald.
386, where a woman, whose husband twelve months previ-
ously had left the country, married again, the presumption
that she was innocent of bigamy was held to preponderate
over the usual presumption of the duration of life. BEST, J.,
said: "The cases cited are very distinguishable; they only
decide that seven years after a person has been last heard of,
you are in all cases to presume his death. But they do not
shew, that where conflicting presumptions exist, you may not
presume the death at an earlier period. Now, those conflict-
ing presumptions exist here, and I think the sessions were
warranted in presuming the death of the first husband, on
the ground that they would not presume that the woman
had committed bigamy."

But the observations of BAYLEY and BEST, JJ., in the above
case, with respect to conflicting presumptions, were ques-
tioned by the court in *Rex* v. *The Inhabitants of Harborne*, 2
A. & E. 544, where it was decided that the court of Quarter
Sessions were right in presuming that the first wife was living,
although such presumption led to the conclusion that the
husband had been guilty of bigamy. The court did not, in
this case, say that the decision in the above case was wrong,
but they observed that there was no absolute presumption in
favor of innocence such as to override all other presumptions;
and they put the case of a man being shown to be alive a
few hours before the second marriage, as one in which the
presumption that he was alive at the time of the second mar-
riage would clearly be made. And it is to be observed that
the circumstances of the two cases differed so much as to
fully justify the court in coming to opposite conclusions on
them.

In *Regina* v. *Lumley*, Law Rep. 1 C. C. Res. 196, which is
the latest English case on the subject under examination that
we have been able to find, LUSH, J., speaking for the whole
court, observed: "In an indictment for bigamy, it is incumbent
on the prosecution to prove to the satisfaction of the jury

that the husband or wife, as the case may be, was alive at the date of the second marriage. That is purely a question of fact. The existence of the party at an antecedent period may or may not afford a reasonable inference that he was living at the subsequent date. If, for example, it were proved that he was in good health on the day preceding the second marriage, the inference would be strong, almost irresistible, that he was living on the latter day, and the jury would in all probability find that he was so. If, on the other hand, it were proved that he was then in a dying condition, and nothing further was proved, they would probably decline to draw that inference. Thus the question is entirely for the jury. The law makes no presumption either way."

In the present case, there was no direct evidence that the first wife of the appellant was living at the time of the second marriage. It was proved by the admissions of the appellant that she was alive two years previous to the second marriage. There was no evidence as to her age or health, which have a controlling influence in the case of conflicting presumptions. It is true that the appellant testified that he had received letters to the effect that his wife had obtained a divorce from him, in the State of New York, but the dates of such letters are not given. If such letters are to prejudice the appellant on the point of the presumption of death, then they were entitled to greater weight than they received as to his good faith in believing that she had obtained a divorce from him prior to the second marriage. The case, as submitted to the jury, stood thus: The State was required to satisfy the jury beyond a reasonable doubt, either by direct proof or presumptions arising from facts proved, that the first wife was living at the time of the second marriage. There was no direct evidence. The presumption of the continuance of life was neutralized by the presumption of the innocence of the defendant. Bishop says, in such a case, the jury must act on other presumptions or evidence. There are no presumptions of law. There was no evidence as to the age or health of the first wife to strengthen the presump-

Squire *v*. The State.

tion of the continuance of her life.    The case was submitted to the jury without either direct evidence or a presumption to establish that she was alive at the time of the second marriage.    Without such proof, there could be no conviction, for there was no crime committed, if the first wife was dead or divorced.    Inasmuch as the State was required to prove the appellant's guilt beyond a reasonable doubt, we think the jury were not justified in coming to the conclusion, over the presumption of his innocence, that the first wife was living at the time of the second marriage.

We think the admissions of the appellant were sufficient to establish the first marriage, and that it was legal.

We think the court committed no error in admitting in evidence the marriage license issued by the clerk of Daviess county, and the return made thereon by the clergyman who performed the marriage ceremony.

It is earnestly insisted by counsel for appellant, that the evidence failed to prove that the second marriage took place in Daviess county, but as the judgment will have to be reversed, the State can supply any omission as to the record upon another trial, and we therefore express no opinion on the point made.

For the failure of the State to prove that the first wife was living at the time of the second marriage, the judgment must be reversed.

The judgment is reversed, with costs; and the cause is remanded for a new trial, in accordance with this opinion; and the clerk will direct the warden of the southern prison to remove the prisoner to the jail of Daviess county.