## THE STATE OF KANSAS v. CHASTEEN HUGHES.

1. BIGAMY — *First Marriage — Allegation and Evidence.* In a prosecution for bigamy, it is not necessary to allege in the information or indictment the exact time and place of the first marriage. It is sufficient in that respect to allege and prove that the marriage relation existed between the accused and his first wife at the time of the second marriage.

2. FORMER MARRIAGE; *Competent Evidence.* In such a prosecution, the deliberate admissions of the defendant of a former marriage, coupled with cohabitation and repute, are evidence tending to prove an actual marriage, upon which a jury may convict.

3. —— —— *Inadmissible Evidence for Defendant.* The declarations of the defendant, made in his own favor, respecting the first marriage, which formed no part of any statement or conversation called out by the state, and which were no part of the *res gestæ*, are inadmissible for the defense.

4. —— —— *Revision of Sentence.* The district court may, until the term ends, revise, correct or increase a sentence which it has imposed upon a prisoner, where the original sentence has not been executed or put into operation.

### *Appeal from Shawnee District Court.*

PROSECUTION for bigamy. At the September Term, 1885, the defendant *Chasteen Hughes* was tried, found guilty, and sentenced to be confined in the penitentiary for one year. He appeals.

*Jetmore & Son,* for appellant.

*S. B. Bradford,* attorney general, and *Charles Curtis,* county attorney, for The State.

The opinion of the court was delivered by

JOHNSTON, J.: This is an appeal from a judgment of conviction rendered against the appellant for bigamy. It was alleged in the information that —

"Chasteen Hughes, at the county of Shawnee, in the state of Kansas aforesaid, and within the jurisdiction of this court, on the 21st day of March, 1885, did then and there unlawfully and feloniously marry one Loretta Cavender, and her, the said Loretta Cavender, then and there had for his wife, and the said Chasteen Hughes then and there being a married person, being then and there married to one Mary Hughes, she, the said Mary Hughes, being then and there alive, and the bond of matrimony between the said Chasteen Hughes and Mary Hughes then being still undissolved."

It is insisted by the appellant that the information is defective in this, that it does not state the time and place of the

1. First marriage; allegation and evidence.

first marriage; and the refusal of the court to quash the information upon that ground, is the first objection which is made. The objection is not good. There is nothing in the statute nor in the nature of the offense requiring such particularity of averment. The offense, as defined by statute, consists in marrying a second time while the husband or wife of the defendant is still living. That the accused had a wife living at the time he contracted the second marriage, is an essential allegation which should be stated with precision. But information of the exact time and place of the first marriage is not always available to the prosecution, nor is it very important to the defense. It is enough to allege and show that the marriage relation had been entered into and existed between the accused and his first wife at the time of the second marriage. The information clearly charges that the defendant had a wife living at the time of the second marriage, and the first wife is identified

and described by name, which is sufficient to apprise him of the particular offense against which he is required to defend. The substantial rights of the defendant upon the merits could not have been prejudiced by the absence of these averments, and the ruling of the court upon the motion cannot be held erroneous. (Crim. Code, § 110; *Hutchins v. State,* 28 Ind. 34; *State v. Bray,* 13 Ired. 289; *State v. Armington,* 25 Minn. 29.)

The principal question presented upon the appeal is the competency and sufficiency of the testimony offered to establish the alleged first marriage of the appellant. This question arises upon an objection to testimony offered by the state of the admissions and conduct of the defendant, with respect to the first marriage, and upon the charge of the court. The learned judge who tried the case refused to charge the jury that there must be proof of a formal celebration of the marriage ceremony, but gave the following instruction:

"The marriage between a man and a woman in this state is a civil contract to which the assent of the contracting parties is essential, and may be proven in this case like any other fact. The evidence of the admissions of the defendant that he and Mary Wheat intended to marry, the defendant's admissions that he and Mary Wheat were married, and the evidence that the defendant and Mary Wheat cohabited together as husband and wife, and that he held her out to his neighbors and friends as his wife, and that there was a child born to them while cohabiting together, tend to prove the fact that the defendant and Mary Wheat were married, and were husband and wife."

The doctrine of this instruction is denied by the appellant, and he contends that the admissions and evidence of cohabitation are inadmissible and insufficient to prove the first marriage until there is introduced some record evidence, or evidence by the officiator, or the testimony of an eye-witness, of the formal solemnization of the marriage; and to support his contention he cites *Commonwealth v. Littlejohn,* 15 Mass. 163; *People v. Humphrey,* 7 Johns. 314; *State v. Roswell,* 6 Conn. 446; *People v. Lambert,* 5 Mich. 349; *State v. Armstrong,* 4 Minn. 335. The course of decision upon this question has

not been uniform. In the states of New York, Massachusetts, Connecticut, and Minnesota, the rule contended for by the appellant has been held, but the weight of authority and the better reason support the proposition that the acts and declarations of the parties, coupled with cohabitation, are competent evidence to go to the jury in proof of marriage.

Mr. Greenleaf, in discussing the proof necessary to sustain the charge of bigamy, lays down the rule that the first marriage "may be shown by the evidence of persons present at the marriage, with proof of the official character of the celebrator; or, by documents legally admissible, such as a copy of the register, where registration is required by law, with the proof of the identity of the person; *or, by the deliberate admission of the prisoner himself.*" (3 Greenl. Ev., § 204.)

In his work on Criminal Law, Mr. Wharton states that—

"When the *lex fori* recognizes, as is the case in all those jurisdictions in which the English common law continues in force, consensual marriages, the admissions of the parties may be received as tending to establish such marriages, whatever may be the weight to which they may be entitled, provided such admissions have not been extorted by force or fraud." (2 Wharton's Crim. Law, § 1700.)

As a general rule, the confession of a party voluntarily and deliberately made, is evidence of the highest nature against him. The objections urged against testimony of this character in a prosecution for bigamy, are that the confession may have been lightly made, or stated by parties living in a state of fornication for the purpose of avoiding public censure or public prosecution; but these are reasons which go to the credibility rather than to the competency of the testimony. The force and effect of the testimony are to be weighed and determined by the jury, and depend upon the manner and circumstances under which the confession was made. If it was carelessly stated, or the circumstances under which it was made indicated a purpose to conceal from the public illicit relations existing between the parties, the jury should not, upon such unsupported confession, convict the defendant; but

where it is freely and solemnly made by parties cohabiting together, and frequently repeated to different persons, with no apparent motives to hide the real facts, it is clearly competent to go to the jury, whose province it is to determine its sufficiency. It is direct and positive proof of an actual marriage. Counsel for appellant conceded that a marriage might be proved by a witness present at the ceremony, and certainly a party to a marriage contract who has complete knowledge of the facts is as competent, and his testimony is of as high a nature, as that of a mere eye-witness, who may be mistaken as to the occurrence, the identity of the parties, or their capability to contract marriage. The confession in this case was that the appellant and Mary Wheat were married in Missouri. In that state it is not essential to the validity of a marriage that there should be any ceremony or formal solemnization of the contract. An agreement entered into in good faith between parties capable of contracting marriage, followed by cohabitation, is there held to be sufficient to constitute a valid marriage, and to subject them to legal penalties for a disregard of its obligations. (*Dyer v. Brannock*, 66 Mo. 391.)

By the terms of our statute, a marriage which is valid where it is contracted must be held valid in all courts and places in this state. (Comp. Laws of 1879, ch. 61, § 9.) If this marriage was then a mere consensual one, as it might have been, how can it be established? If the parties, by mutual consent, agreed to take each other as husband and wife, and thereafter cohabited as such, without any ceremony, religious or otherwise, how can the rule contended for by appellant be applied? In such a case there would be no record evidence, no officiator, and no eye-witness of the solemnization of the marriage. The best, and in fact about the only evidence, that can be offered to establish such a marriage, is the acts and declarations of the parties themselves. Some of the courts have gone to the extent of holding the bare confessions of the party to be competent and sufficient to establish marriage; but however that may be, the multiplied decisions are such that it may be regarded

2. Former marriage; competent evidence.

as the settled doctrine of the American courts, that in prosecutions for bigamy, the deliberate admissions of the defendent of a former marriage, coupled with cohabitation and repute, are evidence tending to prove actual marriage, upon which a jury may convict. (*State v. Hughes,* 2 Kas. L. J. 395; *Warner's Case,* 2 Va. Cas. 95; *Wolverton v. The State,* 16 Ohio 173; *Squire v. The State,* 46 Ind. 459; *Commonwealth v. Jackson,* 11 Bush, 679; *Cook v. The State,* 11 Ga. 53; *Langtry v. The State,* 30 Ala. 536; *State v. Hilton,* 3 Rich. 434; *Murtagh's Case,* 1 Ash. 272; *Forney v. Hallacher,* 8 Serg. & R. 159; *The State v. Britton,* 4 McCord, 256; *Williams v. The State,* 54 Ala. 131; *Halbrook v. The State,* 34 Ark. 511; *O'Neale v. Commonwealth,* 17 Gratt. 582; *The State v. Seals,* 16 Ind. 352; *Finney v. The State,* 3 Head, 544; *The State v. Libby,* 44 Me. 469; *Jackson v. The People,* 2 Scam. 231; *Commonwealth v. Henning,* 10 Phila. 209; *West v. The State,* 1 Wis. 209; *Miles v. United States,* 103 U. S. 304.)

About the sufficiency of the testimony to sustain the verdict when assailed in this court, there can be little doubt. The conduct of the defendant, as detailed in the evidence, is strongly corroborative of his repeated and deliberate declarations that he married Mary Wheat in August, 1883. It is in testimony that the defendant was a frequent visitor at the home of Mary Wheat during the summer of 1883, and that in August of that year he asked and obtained consent of Mary's father to marry her, and that on the 15th of August, 1883, the defendant and Mary started to Kansas City, Mo., with the avowed purpose of getting married. Both parties subsequently declared that they were there married, and they exhibited a marriage certificate which purported to be duly signed and witnessed, dated August 16, 1883, by which it appeared that they had been married by a Methodist minister of Kansas City, Missouri. They lived together as husband and wife in the cities of Leavenworth, Wyandotte, Kansas City, and Topeka, from August, 1883, until March, 1885. During this time they visited among and were visited by their

relatives and acquaintances, when the defendant introduced, spoke of and in all respects treated Mary as his wife. On December 13, 1884, while they were living and cohabiting together, a child was born to them. During the same time the defendant applied to become a member of the "Ancient Order of Foresters," and in the blank application for insurance, the blank being filled out in writing by himself, he designated Mary Hughes as his wife. This application gives the name of the defendant, his age, occupation, and post-office address, and designates his wife as beneficiary, stating her name, age, and condition of health. It is true, there was contrary testimony offered on behalf of the defendant, but as the second marriage was conceded, a finding of guilty on the foregoing testimony will certainly not be disturbed.

It is next contended that the court erred in excluding testimony offered by the defendant. Mrs. Dora Wheat was asked to state "what was said to her by the defendant and her daughter while they were living together as to their relations with one another with reference to being married." The objection to this question was properly sustained.

3. Inadmissible evidence for defendant.

It did not appear that the testimony sought for was a part of any conversation called out by the prosecution, nor can it be regarded as a part of the *res gestæ*, but rather as a self-serving declaration of the defendant which was not admissible. The answer of the witness that Mary Wheat lived with the defendant in the relation of mistress instead of wife, was a mere conclusion of the witness, and was also rightly excluded from the jury.

The final complaint made in the case is, that the court erred in the sentence. When the defendant was first called for sentence, the court inadvertently adjudged him to confinement at hard labor in the penitentiary for a term of six months. This, of course, was erroneous, for no person can be sentenced to confinement at hard labor in the penitentiary for a term less than one year. (Comp. Laws of 1879, ch. 31, § 291.) Within an hour after sentence was pronounced, the attention of the court was called to the mistake, and the prisoner and his coun-

sel being still in court, the case was again called, and the court proceeded to sentence the prisoner to imprisonment for a term of one year. It does not appear that a formal order was made setting aside the first sentence, but the court pronounced the second sentence upon the same verdict, stating in the record as a reason for its action, that the statute did not authorize the judgment first pronounced. This was, in effect, a setting aside of the first judgment; and the only formal judgment recorded in the case is the one under which the prisoner is in custody sentencing him to imprisonment for one year. The general rule is that the records of a court may be corrected or revised at any time during the term at which the judgment is rendered. The sentence first pronounced against the defendant was not executed or put into operation, and "so long as it remained unexecuted, it was, in contemplation of law, in the breast of the court, and subject to revision and alteration." (*Commonwealth v. Weymouth*, 2 Allen, 147.) We think it is 4. Sentence may clearly within the discretion and power of the be revised. court until the end of the term, to amend and revise or increase the sentence which had not gone into effect. (1 Bish. on Cr. Proc., § 1298, and cases cited.) As nothing had been done under the sentence first pronounced, and as the final sentence did not impose a penalty in excess of that provided by law, the rights of the defendant were not infringed upon, nor has he any ground for complaint.

Finding no error in the record, the judgment of the district court will be affirmed.

All the Justices concurring.