CRANE *v.* STATE.

(*Knoxville.*    November 12, 1894.)

1. SUPREME COURT.   *General objection to evidence.*

A general objection to evidence will not be noticed by the Su-
preme Court.   (*Post, pp. 89, 90.*)

Cases cited and approved: Railroad *v.* Fleming, 14 Lea, 129; Bax-
ter *v.* State, 15 Lea, 657; Iron Co. *v.* Dobson, 15 Lea, 409; Drug-
gist Cases, 85 Tenn., 449; Powers *v.* McKenzie, 90 Tenn., 167;
Railway Co. *v.* Beeler, 90 Tenn., 548; Graham *v.* McReynolds,
90 Tenn., 674; Miller *v.* State, 12 Lea, 223.

2. SAME.   *Refusal of first application for continuance.*

It is not reversible error for the Court to refuse the defendant
in a felony case a continuance at the first term, over his gen-
eral affidavit averring absence of several witnesses whose tes-
timony he desired, when he does not deny his guilt or indicate
any defense to the charge, either in his affidavit or upon the
trial.   (*Post, pp. 90, 91.*)

3. BIGAMY.   *Proof of first marriage.*

In prosecutions for bigamy proof of the fact of the first marriage
in another State, and of the validity and regularity of such
marriage under the laws of that State, is sufficiently made, in
the absence of explanatory or countervailing evidence on the
part of defendant, by the oral testimony of bystanders prov-
ing the performance of a marriage ceremony between defend-
ant and the woman named as his first wife, and by proof of
subsequent cohabitation of the parties, and of defendant's
admission of the fact of such marriage.   (*Post, pp. 90, 93.*)

Code cited: § 5651 (M. & V.); § 4841 (T. & S.).

Case cited and approved: 52 Mo., 84.

Cited and distinguished: Bashaw *v.* State, 1 Yer., 177.

4. SAME.   *Acknowledgment of marriage.*

Any admission by defendant of the fact of marriage, by words
or conduct, in the presence of one or more persons, is sufficient,

Crane v. State.

under that provision of the statute making "the testimony of any bystander who witnessed the ceremony and the public acknowledgment of the party charged" competent evidence of both marriages in prosecutions for bigamy. (*Post, pp. 93, 94.*)

Code construed: § 5651 (M. & V.); § 4841 (T. & S.).

Case cited and approved: Finney v. State, 3 Head, 546.

5. SAME. *Defendant's knowledge that first wife was alive. Charge.*

It is not error for the Court to charge, in a bigamy case, that defendant is guilty if he either knew, or had good reason to believe, that his first wife was alive at the date of his second marriage. (*Post, pp. 95–97.*).

---

FROM KNOX.

---

Appeal from Criminal Court of Knox County. T. A. R. NELSON, J.

J. H. WELCKER, H. H. INGERSOLL, and J. F. J. LEWIS for Crane.

Attorney-general PICKLE for State.

WILKES, J. The defendant, Crane, was indicted for bigamy, convicted, and sentenced to three years imprisonment in the State penitentiary, and has appealed to this Court.

Defendant was married, July 3, 1894, to an estimable lady in the city of Knoxville, Tenn., by a regularly ordained minister of the gospel, and under a legal license. This fact is proven by the minister who performed the ceremony, and by a certified copy

Crane *v.* State.

of the license, and the return indorsed upon it, and is not denied or questioned in any way.

The State's contention is, that at the time of this marriage defendant already had a wife living in Alexandria, Virginia, to whom he was married about eight years ago, and who is still living. It is contended, in his defense, that there is no sufficient proof of the first marrriage.

Mrs. Mary Crane testifies that she is a sister of James Peverill, the father of the first wife, and also connected by marriage with the defendant; that the defendant came to her home in Alexandria, Virginia, about eight years ago upon a visit, and remained some six months or ,more; that her niece, Addie C. Peverill, a girl sixteen years of age, was visiting at her home at the same time, and the two became intimate. Defendant afterward came to Knoxville. A few months thereafter, the witness wrote to defendant to come back to Alexandria and marry the girl, to which he replied that he did not have the money. Whereupon, witness sent him the money, and he went back to Virginia and married the young lady, in the witness' house, and in her presence, and lived with her a few days at witness' home after they were married, occupying the same room as husband and wife.

About five or six days after the marriage a child was born to the wife. Witness states negatively that defendant never made any claim that the child was not his. He left immediately thereafter, and

came to Knoxville, where he has been ever since. The witness further states that the reason she desired defendant to marry the girl was that he had seduced her sometime before the marriage while at her home. She also testified that the wife, Addie, was alive July 3, 1894, when witness left Alexandria, and had, ever since her marriage, lived with her father in Alexandria.

The father of Addie testifies that he was present and witnessed the marriage of defendant and his daughter at his sister's house; that defendant lived with her only five or six days, and that she has been since living with him; that defendant left and came to Knoxville, and that he and his daughter were all the time aware that defendant was living in Knoxville. He also states that defendant confessed to him since he came to Knoxville, recently, and since the second marriage, that he knew he had a living wife when he married the second time. He also testified that his daughter was alive when he left Alexandria July 3, 1894, and had never been divorced from defendant.

The testimony of both these witnesses was objected to in the Court below, but the ground of objection does not appear in the record. It has been repeatedly held that in criminal, as well as civil, cases a general objection in the Court below, without assigning any reason therefor, will not be noticed in this Court. *Railroad* v. *Fleming*, 14 Lea, 129; *Baxter* v. *The State*, 15 Lea, 657; *Iron Co.* v.

*Dobson*, 15 Lea, 409; *Druggist Cases*, 1 Pickle, 449; *Powers* v. *McKenzie*, 6 Pickle, 167; *Railway Co.* v. *Beeler*, 6 Pickle, 548; *Graham* v. *McReynolds*, 6 Pickle, 674; *Miller* v. *The State*, 12 Lea, 223. The reason is, that the opposite party may be given the opportunity to act advisedly, and not be entrapped into error after it is too late to remedy the matter by introducing other evidence, which might be done if specific objection was made.

Defendant was indicted October 11, 1894, and gave bond for his appearance from day to day, and, on October 16, 1894, made an application for a continuance, supported by affidavit. The application was denied, and the defendant was put on his trial at once, and convicted.

He moved for a new trial, but the grounds of motion are not stated, and it is not supported by any affidavit. It was overruled, and defendant appealed.

It is insisted that the trial was unduly hastened, and that a continuance should have been granted. Looking to the defendant's affidavit for a continuance, it appears that he gives the names of several witnesses whose testimony he desires, and could obtain if a continuance should be allowed; but he gives no intimation of what he expected to prove by them, which, however, might have been waived on the first application. But he nowhere states that he is innocent of the charge; does not deny either marriage, or state that he believed his first wife to be dead when he entered into the second

Crane *v.* State.

marriage; in short, no fact is stated tending to show, either directly or indirectly, his innocence, or that he had any defense whatever. It was not error in the Court to refuse a continuance under these circumstances, even on a first application.

It is insisted that the first marriage is not sufficiently proven. The contention is, that marriage, in cases of prosecution for bigamy, cannot be proven by bystanders who witnessed the ceremony, unless such bystanders also *prove the official character of the person who performed the ceremony, and that the marriage was legal under the law of the place where it was celebrated,* and according to the requirements of that law, and neither can it be proven by any private confession of the defendant, even though proof of cohabitation should also be made out, which it is insisted is not done in this case. While there is a very great conflict of authority in the decisions of different Courts, as to what evidence is competent and sufficient proof of marriage in the absence of statutory regulation, yet all the Courts are agreed upon certain facts as sufficient.

Mr. Bishop says: "The common course of proof is to present the record evidence, and with it evidence to identify the parties, and these are *prima facie* sufficient. The testimony of persons present at the marriage is good evidence without the record, though the absence of the record may, under some circumstances, create suspicion." Bishop on Statutory Crimes, Sec. 610.

In the case of *Miles* v. *The United States*, 103 U. S., 304 (26 L. Ed., 481), the Supreme Court of the United States held, that on an indictment for bigamy the first marriage may be proven by the admissions of the defendant, and it is for the jury to say whether what he said was an admission that he was actually and legally married, according to the laws of · the country where the marriage was solemnized. See · 3 Rice on Evidence, Secs. 513, 514, 515; 1 Roscoe Crim. Ev. (8 Am. Ed.), 454.

In *Taylor* v. *The State*, 52 Mo., 84, the Court said: "In some States it has been held when, in a criminal case, it was found necessary to prove a marriage in order to convict a defendant of crime with which he is charged, that all the essentials to a valid marriage must be strictly proved, as well as the law of the State or country where the marriage was celebrated, and also that the admissions of the defendant's cohabitation and reputation were not sufficient evidence of such marriage. But experience has proven that such a rule in the United States amounts, in a large number of cases, to a denial of justice. Our people are migratory in their habits, and very many of our foreign-born citizens were married in countries where they were born. To prove a marriage which was celebrated in Bavaria, or even Canada, within the rule adopted in some cases, is oftentimes an impossible task. Doubtless on account of this difficulty, the rule has been modified, and the better doctrine now is that cohab-

itation, reputation, and admissions are sufficient evidence of a legal marriage to submit to a jury. See the case reported in 2 Hawly's Am. Crim. Rep., 17.''

Bishop, in his work on ''Marriage, Divorce, and Separation,'' Vol. I., Sec. 1119, says: ''We have, congregated in the United States, immense masses of refugees from poverty and oppression in the Old World, not to speak of our States being foreign to one another as to this class of law, and if, whenever a foreign marriage is to be proved, the foreign law must be shown as a separate fact, there can be no end to the useless trouble which Courts and litigants will have in these cases, or the failures of justice therefrom.''

This author's conclusion is that, whenever two apparently marriageable persons enter into a contract or go through a form of solemnization which purports to be a marriage, and nothing is presented to throw discredit on the proceedings, the foreign law will be presumed *prima facie* to make the marriage legal.

We have a statutory regulation of the matter.

The Code (M. & V.), § 5651, provides: ''In all trials under the preceding sections, a certified copy of the marriage license, and return of the person authorized to solemnize the rites of matrimony, shall be sufficient proof of either the first or second marriage, and, in the absence of such certified copy, the testimony of any bystander who witnessed the mar-

riage ceremony, and the public acknowledgment of the party charged, shall be competent evidence as to both of said marriages."

Criticism is directed to the term "public acknowledgment of the party charged," and it is insisted that this means some acknowledgment before a Court or other public tribunal. We do not so construe the law, but any acknowledgment of the fact of marriage, by confession or conduct, in the presence of one or more individuals, would answer the requirement of the statute. It need not be in the shape of a public avowal, made in the Courts, or in the market place, or from a house top, but can be made as well by acts and conduct recognizing the marriage, as by oral statements to third persons. See *Finney* v. *The State*, 3 Head, 546.

It is said the proof is not sufficient to show that defendant knew his first wife was alive when he married the second time. It appears that he left his first wife within five or six days after the marriage, and came to Knoxville, while she remained in Alexandria, where he married her, and at her father's home. It is not shown by his affidavit for continuance that he was ignorant of the fact that she was still alive, nor does such fact appear upon the motion for a new trial. The defendant introduced no proof whatever, but the father of the first wife states that defendant told him recently, before the trial, that he knew his first wife was alive when he married the second time, and this is nowhere contradicted.

It is not necessary that direct *proof of knowledge* should be made. This, in many cases, would be impracticable, but it may be shown by facts and circumstances, and certainly by the defendant's own confessions.

The Court did not, therefore, err in charging that defendant was guilty, if he knew that his former wife was living, *or had good reason to believe she was alive when he made the second marriage.* See Code (M. & V.) § 5650. There is nothing in the holdings in this case in conflict with the case of *Bashaw* v. *The State*, 1 Yerg., 177. In that case there was a *sharp contest* over the question whether the first marriage was a *common law marriage* or a statutory marriage, and whether the former was a valid and legal marriage under the laws of Tennessee. It was made to appear, by proof, in that case, that Benjamin Bashaw and Sally Cole appeared in the County of Davidson, before Isaac Walton, a Justice of the Peace of Sumner County, and mutually agreed to take, and did take, each other for husband and wife, and Isaac Walton pronounced them to be husband and wife. It affirmatively appeared that Walton had no license to marry the parties, and that he was a Justice of the Peace of Sumner County, and not of Davidson County, when he performed the ceremony. The Court held, upon this proof, that the marriage was a common law marriage, and was not valid, and would not support a conviction for bigamy. In commenting upon the Act of 1820, which is sub-

stantially the same as the present statutes (M. & V. Code, §§ 5650, 5651), the Court said: "It is not intended here to convey the idea that the bystander shall prove that he saw the marriage license in the actual possession of the Justice of the Peace,. or that he read it, and the indorsement upon it, with the signature of the Justice of the Peace, and that the license and certificate were genuine and authentic papers, but he must give such testimony respecting these particulars, together with the performance of the ceremony, as will enable the jury to be satisfied that the marriage ceremony was actually performed under the authority of a regular and genuine license, by a person duly qualified to solemnize it.

As applied to that case, where all the facts connected with the marriage were brought out in the proof, and a sharp contest and controversy was made, both on the facts and law, as to whether that marriage was valid or not, or whether the prerequisites to a valid marriage were complied with, the holding was correct. But in this case no contest is made; no objection was made, so far as the record shows, on account of the failure to produce the license or to prove that the party officiating was not regularly authorized to perform the ceremony. *No evidence to impeach the apparent regularity of the proceeding is given, and no explanation is offered whatever.*

If defendant had a real defense growing out of any irregularity or invalidity in this proceeding, it

Crane *v.* State.

was within his power to make it known and to point out the defects; but we have absolutely no explanation, and no countervailing proof in the case, but only the testimony as to the ceremony, the subsequent cohabitation, which, together with the ceremony, amounts to acknowledgment, and his subsequent confessions and statements to the girl's father of the marriage.

We are of opinion that, from this record, in the *absence of any contradictory* evidence, the fact and legality of the first marriage is sufficiently proven, as well as the fact that defendant knew his first wife was alive when he made the second marriage, and that there is no error in the charge of the Court. In so holding we do not intend to be understood that the failure of defendant to testify can in any way prejudice his case, nor that the law will *presume* the legality of the first marriage to establish a conviction for bigamy, but to hold that the evidence adduced by the State, in the *absence of specific objection, was competent, and, in the absence of any explanation or contradiction, is sufficient to establish the fact and validity of the first marriage.*

It follows that there is no error in the judgment of the Court below, and it is affirmed.