## MARTIN B. DUNLAP *v.* STATE.

### (*Knoxville.* September Term, 1912.)

1. **BIGAMY.  Burden is on State to prove beyond a reasonable doubt the death of the former spouse.**

  In the prosecution of a man for bigamy, the burden of proof is upon the State to prove, beyond a reasonable doubt, by direct or circumstantial evidence, that the former wife of the accused was living at the time of his second marriage.  (*Post, pp.* 419-426.)

  Code cited and construed:  Secs. 6760-6762 (S.); secs. 5649-5651 (M. & V.); secs. 4839-4841 (T. & S. and 1858).

  Cases cited and approved:  Parker v. State, 77 Ala., 47; Squire v. State, 46 Ind., 459.

  Case cited and distinguished:  Crane v. State, 94 Tenn., 94.

2. **SAME.  Presumption of innocence overcomes presumption of continuance of life of the former spouse.**

  The presumption of the continuance of life of the former spouse is neutralized or overcome by the presumption of innocence of the accused charged with bigamy.  The law makes no presumption either way in such cases.  (*Post, pp.* 420-422.)

  Code cited and construed:  Secs. 6760-6762 (S.); secs. 5649-5651 (M. & V.); secs. 4839-4841 (T. & S. and 1858).

  Cases cited and approved:  Rex v. Twying, 2 B. & Ald., 386; Regina v. Willshire, Q. B. D., 366; Regina v. Lumley, Law Rep., 1 C. C. Res., 196; Commonwealth v. McGrath, 140 Mass., 296; Squire v. State, 46 Ind., 459.

  Case cited and distinguished:  Crane v. State, 94 Tenn., 94.

3. **SAME.** No presumption that former spouse was living at second marriage, from fact of living four and a half years before trial.

In a prosecution for bigamy, it cannot be presumed that the former spouse of the accused was living at the time of the marriage charged to be bigamous, from the fact that the former spouse was alive four and one-half years before the trial occurring about a year after the alleged bigamous marriage. (*Post, pp.* 422-426.)

Case cited and approved: People v. Feilen, 58 Cal., 218.

4. **SAME.** Evidence insufficient to show former spouse to be living at time of alleged bigamous marriage.

In a prosecution for bigamy, the evidence is stated, reviewed, and *held* to be insufficient to show that the former wife of the accused was living at the time of his alleged bigamous marriage.

---

FROM BLOUNT.

---

Appeal from the Circuit Court of Blount County.— S. C. BROWN, Judge.

THOS. N. BROWN, for Dunlap.

ASSISTANT ATTORNEY-GENERAL FAW, for State.

---

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

Plaintiff in error, Martin B. Dunlap, was by indictment charged with the crime of bigamy. Upon arraign-

Dunlap v. State.

ment, he entered a plea of not guilty. Upon his trial, the jury found him guilty as charged. His motion for a new trial was overruled, and he was sentenced to serve two years in the State penitentiary in accordance with the verdict of the jury. He appealed to this court, and has here assigned error.

Upon this assignment of errors, the only question arising is whether or not the State, on the trial below, made out its case by proof sufficient in law of the fact that the woman first married by plaintiff in error was living at the time of the second marriage.

The indictment charged "that Martin B. Dunlap, on the 4th day of January, 1911, in the State and county aforesaid, being already lawfully married, and having at the time a living wife from whom he had not been divorced, did unlawfully, knowingly, willfully, and feloniously marry one Eva Simmerly, against the peace and dignity of the State."

Our statute on the subject of bigamy and bigamous cohabitation is found at section 6760 of Shannon's Code in these words: "If any person, being married, shall marry another person, the former husband or wife then living, or continue to cohabit with such second husband or wife, in this State, such person shall be imprisoned in the penitentiary for not less than three or more than twenty-one years." Section 6761 of Shannon's Code provides that "no person shall be deemed guilty under the preceding section whose husband or wife shall continuously remain beyond the limits of the United States,

126 Tenn. 27

or absent him or herself from the other without the knowledge of the party remarrying that the other is living, for the space of five years together, or who has good reason to believe such former husband or wife to be dead."

The plaintiff in error was first married to Josie Hardin in Blount county, Tenn., on the 14th day of April, 1906. His second marriage was to Eva Simmerly on the 4th day of January, 1911. Each of these marriages was properly proved by a certified copy of the marriage licenses and the return of the person authorized to solemnize the marriage under the provisions of our statute. Section 6762 of Shannon's Code.

The State, upon trial of the cause, produced no witness by whom proof was made that the first wife was living at the date of the second marriage, nor, as we see the record, do the circumstances developed by the State's proof establish this very material and important fact. The defendant's proof is equally barren of evidence or circumstances establishing this fact. It appears from the defendant's proof that, at the date of the trial, he was twenty-four years of age. At the date of his first marriage, he was about seventeen years of age. He had known the girl of his first marriage only ten days at the date of that event. He claims to have discovered very soon after his marriage that she was a bad woman. They separated, and she returned to her home in Georgia. This separation, he said, was nearly five years before his trial, since which time he claims never to have seen her, or received a letter or direct message from her. He

Dunlap v. State.

received a letter from an acquaintance in Georgia, stating that his first wife had again married in that State, and that she was in bad health—near unto death. It does not appear how long before the second marriage this information was communicated to plaintiff in error. From the testimony of another witness, it appears that he knew the woman first married by plaintiff in error, and that he saw her near the Georgia and Tennessee State line four and one-half years before the date of the trial in the court below; that, at the time he saw her, she was very sick with a bad disorder, and that she did not expect to live very long; and the witness stated that he did not think, from what he saw of her, that she could live very long. He stated that she had sores over her face, her mouth, and other places; that she looked very bad; that he had not heard from her since the time he saw her, four and one-half years before the trial; that he did not know whether she was· dead or alive at the date of the trial.

If the woman first married was, in fact, dead at the date of the second marriage, manifestly, the latter marriage was valid, and, in making it, no offense was committed by the plaintiff in error. It was, therefore, a vital part of the State's case to prove, either by the direct evidence of some competent witness who knew the fact, or by circumstances in law sufficient to establish the fact, that the first wife was living at the date of the second marriage.

In McClain on Criminal Law, sec. 1084, it is said:

"The fact that the former spouse is still alive may be established by circumstantial evidence"—citing *Parker* v. *State,* 77 Ala., 47, 54 Am. Rep., 43; *Crane* v. *State,* 94 Tenn., 86, 98, 28 S. W., 317. "It has been said that there is a presumption, after proof that the former spouse was alive at a date prior to the second marriage, that such life continued until the second marriage, there being no evidence to the contrary"—citing *Parker* v. *State,* 77 Ala., 47, 54 Am. Rep., 43; *Gorman* v. *State,* 23 Tex., 646. "This presumption, however, is one of fact, and not of law, and of varying strength according to the circumstances. It must be considered by the jury, in connection with the length of time intervening, the age and health of the person, and other circumstances affecting the probability of the continuance of life"—citing *State* v. *Plym,* 43 Minn., 385, 45 N. W., 848; *Squire* v. *State,* 46 Ind., 459; *Reg.* v. *Lumley,* L. R., 1 C. C., 196; *Reg.* v. *Jones,* Q. B., 118. "The fact of the former spouse being alive at the time of the second marriage must be proved beyond a reasonable doubt"—citing *Squire* v. *State,* 46 Ind., 459. "As against the presumption of the continuance of life, there is the presumption of innocence" (citing *Rex* v. *Twying,* 2 B. & Ald., 386), "and therefore it is more reasonable to say that there is no presumption either way, but that the question is one for the jury solely as a matter of fact" —citing *Com.* v. *McGrath,* 140 Mass., 296, 6 N. E., 515; *Reg.* v. *Willshire,* Q. B. D., 366.

In the note to the last quoted text, the author says: "In one case, it is said that proof of the mere fact that

the former spouse was alive three years before the second marriage was not sufficient to support a conviction"—citing *People* v. *Feilen,* 58 Cal., 218, 41 Am. Rep., 258.

In Cyc., vol. 5, p. 700, in respect of the burden of proof, it is said: "The prosecution must prove a valid first marriage contracted by defendant, and that the lawful spouse of defendant was living at the time of the contraction of the second marriage by him."

In *Regina* v. *Lumley,* Law Rep., 1 C. C. Res., 196, an English case, Lush, J., speaking for the whole court, observed: "In an indictment for bigamy, it is incumbent on the prosecution to prove to the satisfaction of the jury that the husband or wife, as the case may be, was alive at the date of the second marriage. This is purely a question of fact. The existence of the party at an antecedent date may or may not afford a reasonable inference that he was living at a subsequent date. If, for instance, it were proved that he was in good health on the day preceding the second marriage, the inference would be strong, almost irresistible, that he was living on the latter day, and the jury would, in all probability, find that he was so. If, on the other hand, it were that he was then in a dying condition, and nothing further was proved, they would probably decline to draw that inference. Thus the question is entirely for the jury. The law makes no presumption either way."

In *Squire* v. *State,* 46 Ind., 459, it is said:

"It is next contended that the appellant was improperly convicted, because there was no evidence that his former wife was alive at the time of his second mar-

riage. The statute upon which this prosecution is based provides that 'If any person, being married, shall marry again, the former husband or wife being alive, and the bond of matrimony still undissolved, and no legal presumption of death having arisen, such person so offending shall be deemed guilty of bigamy,' etc. Section 46, 2 G. & H., 452.

"The indictment in the present cause charged that the first wife of the appellant was alive at the time of the second marriage, and that no presumption of death had arisen. If there had been direct proof that the first wife was alive at the time of the second marriage of the appellant, and that he was aware of such fact, the presumption of her death would have been unimportant. But there is no direct proof that she was alive at such time. It therefore becomes necessary to inquire whether there was any presumption of her death, and, if there were, whether such presumption was strong enough to overcome the presumption of the innocence of the appellant. . . .

"In the present case, there was no direct evidence that the first wife of the appellant was living at the date of the second marriage. It was proved by the admissions of the appellant that she was alive two years previous to the second marriage. There was no evidence as to her age and health, which have a controlling influence in the case of conflicting presumptions. The State was required to satisfy the jury beyond a reasonable doubt, either by direct proof or by presumptions arising from facts proved, that the first wife was living at the time of the second marriage. There was no direct evidence. The presumption of the continuance of life

was neutralized by the presumption of the innocence of the defendant. Bishop says, in such a case, the jury must act on other presumptions or evidence. There are no presumptions of law. There was no evidence as to the age or health of the first wife to strengthen the presumption of the continuance of her life. The case was submitted to the jury without either direct evidence or a presumption to establish that she was alive at the time of the second marriage. Without such proof, there could be no conviction; for there was no crime committed, if the first wife was dead or divorced."

For the failure of the State to prove that the first wife was living at the time of the second marriage, the judgment in the above case was reversed.

In our own case, *Crane* v. *State*, 94 Tenn., 94, 28 S. W., 319, where one of the defenses relied on was that there was not sufficient proof of the first marriage, this court held that the trial court, in that case, did not err in charging the jury "that defendant was guilty if he knew that his former wife was living, or had good reason to believe that she was alive when he made his second marriage." But in that case the proof was clear, not only that the first wife was alive at the time of the second marriage, but also that the defendant had admitted to the father of the wife of the first marriage that he, the defendant, knew that his first wife was living at the date of the second marriage. It is clear that this court in this case indulged no presumption that the first wife was living at the date of the second marriage, but, on the contrary, found in the record

full proof of the fact, nor have we found any of our cases of this character, where such presumption has been permitted by this court to take the place of proof of the fact. We can, of course, conceive of a case where circumstances in evidence tending to establish the fact that the first wife was living at the time of the second marriage might amount to *prima facie* evidence of the fact itself, and in the absence of countervailing proof, establish the fact. But we do not find such circumstances in this record. The State introduced no witness who claimed to have ever seen or known the first wife—no witness who testified to an admission by the defendant that he had either positive knowledge or good reason to believe that his first wife was living at the time of his second marriage. On the contrary, the tendency of the evidence of all the State's witnesses, except as later indicated, is to show a complete estrangement of four and one-half years' duration between plaintiff in error and his first wife, and an impression on the part of the plaintiff in error that the reports which he had received of his first wife's remarriage in Georgia and of her probable death had freed him, the plaintiff in error from the bonds of the first marriage. The only proof in this record as to the character of the plaintiff in error is that it is good, and this comes from a justice of the peace who was the State's witness. The wife of the plaintiff in error of the second marriage testifies as a witness for the State, and is the most damaging witness against him. She states that he told her before she married him about his former marriage, but also told her that he

had been divorced from the wife of the first marriage. She admits, however, that he told her that he thought that his first wife was dead. She admits that she has, since the prosecution against the defendant, continued to be on friendly terms with his relatives and visited their houses, but that she and the plaintiff in error had not lived together since the prosecution began. A part of her evidence is as follows:

"The defendant treated me all right while living together, and we had plenty to live on. He told me that his first wife was going to prosecute him, because he did not give her notice about getting a divorce from her in Maryville, and that was why he left me."

The above evidence by the wife of the second marriage is the only evidence for the State tending to refute the defendant's contention that he did not know or have reason to believe his first wife to be living at the time of his second marriage. The defendant, on the other hand, says that his second wife is mistaken in her testimony above quoted. He admits that he did tell her that he had understood that the remarriage of his first wife in Georgia and her long absence from him operated to divorce him from her. He states that he was misled in this, and, furthermore, thought his first wife was dead, and that he had a right to marry again, and otherwise would not have done so. Should we, upon this unsatisfactory state of the proof upon one of the vital points of the State's case, hold the fact to be established that the first wife was living at the time of the second marriage, or should we hold that fact to be

established by presumption or inference from the proven fact that the wife was alive four and one-half years before the trial in the circuit court? The result might be to cause an innocent man to suffer two year's confinement in the State penitentiary, and, furthermore, to brand as bigamous his second marriage, which, for aught we can see of legal evidence to the contrary in this record, may in fact be a lawful marriage. It may be said that no one was more interested to know the fact that the first wife was dead before the second marriage than the defendant. This is true. It may also be said that he, of all men, was most interested in making it appear to the satisfaction of the court that his first wife was dead at the time of his second marriage. This also is true; but it is likewise true that the burden of proof was on the State to show this material fact by legal evidence beyond a reasonable doubt, and that the presumption of innocence protected the defendant until this was done. The harm which might come to the plaintiff in error and his wife of the second marriage and the fruits of their union, should there be any, vastly outweigh the small inconvenience, delay, and expense which the State will suffer by being required to make out this case, and every material part thereof, against the plaintiff in error by competent legal proof, and beyond a reasonable doubt.

Reversed and remanded.